UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PUBLIC ADMINISTRATOR OF THE COUNTY OF
NASSAU, as Administrator of the Estate of EMANUEL
McELVEEN, deceased,

                                  Plaintiff,

     -against-

COUNTY OF NASSAU, COUNTY OF NASSAU
CORRECTIONAL CENTER, NASSAU COUNTY
SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE
CORPORATION, ARMOR CORRECTIONAL HEALTH
SERVICES, INC. and ARMOR CORRECTIONAL
HEALTH SERVICES OF NEW YORK, INC.,

                                  Defendants.
-------------------------------------------------------------------X

Docket #


**VERIFIED COMPLAINT**


**JURY TRIAL
DEMANDED**


Plaintiff, by his attorneys, **Parker Waichman LLP**, complaining of the Defendants herein, respectfully alleges as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction pursuant to 28 U.S.C. Section 1331 due to Defendants' violation of Section 42 U.S.C. 1981, 1983 and 1988 as well as various provisions of the United States Constitution.

2.       Venue is proper in this district under 28 U.S.C. Section 1391 because the claims of the Plaintiff's decedent arose in this district and/or Defendants do business in this district.

3.       This Court also has jurisdiction over the matters alleged pursuant to the principles of supplemental jurisdiction.

4.       Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P.38(b).

5.       That the cause of action alleged herein arose in the County of Nassau and State of New York.

## PARTIES

6.      That at the time of the commencement of this action, Plaintiff PUBLIC ADMINISTRATOR OF THE COUNTY OF NASSAU has offices in the County of Nassau, State of New York.

7.      On September 18, 2017, Plaintiff PUBLIC ADMINISTRATOR OF THE COUNTY OF NASSAU was appointed as the Administrator of the Estate of EMANUEL McELVEEN by order of the Hon. Margaret C. Reilly, Surrogate Judge of the Nassau County Surrogate's Court.

8.      That on or about August 21, 2015 through on or about June 28, 2016, and at all times herein mentioned, Defendant COUNTY OF NASSAU (hereinafter "COUNTY") was and still is a domestic municipal corporation formed pursuant to the laws of the State of New York.

9.      That on or about August 21, 2015 through on or about June 28, 2016, and at all times herein mentioned, Defendant "COUNTY" was and still is a domestic municipal corporation formed pursuant to the laws of the State of New York with its place of business at One West Street, Mineola, New York 11501.

10.     That on or about August 21, 2015 through on or about June 28, 2016, and  at all times herein mentioned, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER was and still is a domestic municipal corporation formed pursuant to the laws of the State of New York.

11.     That on or about August 21, 2015 through on or about June 28, 2016, and  at all times herein mentioned, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER was and still is a domestic municipal corporation formed pursuant to the laws of the State of New York with its place of business at 100 Carman Avenue, East Meadow, New York 11554.

12.     That on or about August 21, 2015 through on or about June 28, 2016, and  at all times herein mentioned, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT was and still is a domestic municipal corporation formed pursuant to the laws of the State of New York.

13.     That on or about August 21, 2015 through on or about June 28, 2016, and  at all times herein mentioned, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT was and

still is a domestic municipal corporation formed pursuant to the laws of the State of New York with its place of business at 100 Carman Avenue, East Meadow, New York 11554.

14.     That on or about June 28, 2016 through on or about July 5, 2016, and at all times herein mentioned, Defendant NASSAU HEALTH CARE CORPORATION was and still is a domestic municipal corporation formed pursuant to the laws of the State of New York.

15.     That on or about June 28, 2016 through on or about July 5, 2016, and at all times herein mentioned, Defendant NASSAU HEALTH CARE CORPORATION was and still is a domestic municipal corporation with its place of business at 2201 Hempstead Turnpike, East Meadow, New York 11554.

16.     That on or about August 21, 2015 through on or about June 28, 2016, and at all times herein mentioned, Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. (hereinafter "ARMOR") was and still is a domestic corporation formed pursuant to the laws of the State of New York.

17.     That on or about August 21, 2015 through on or about June 28, 2016, and at all times herein mentioned, Defendant "ARMOR" was and still is a foreign corporation formed pursuant to the laws of the State of New York with its place of business at 100 Carman Avenue, East Meadow, New York 11554.

18.     That on or about August 21, 2015 through on or about June 28, 2016, and  at all times herein mentioned, Defendant ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC. (hereinafter "ARMOR NEW YORK") was and still is a domestic corporation formed pursuant to the laws of the State of New York.

19.     That on or about August 21, 2015 through on or about June 28, 2016, and  at all times herein mentioned, Defendant "ARMOR NEW YORK" was and still is a foreign corporation formed pursuant to the laws of the State of New York with its place of business at 100 Carman Avenue, East Meadow, New York 11554.

## NOTICE OF CLAIM

20.     That prior hereto on September 22, 2016 and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries

and damages were sustained, together with plaintiff's demands for adjustment thereof was duly served on the claimant's behalf on the Comptroller of COUNTY OF NASSAU and that thereafter said Comptroller for COUNTY OF NASSAU refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

21.    That prior hereto on September 22, 2016 and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries and damages were sustained, together with plaintiff's demands for adjustment thereof was duly served on the claimant's behalf on the Comptroller of COUNTY OF NASSAU CORRECTIONAL CENTER and that thereafter said Comptroller for COUNTY OF NASSAU CORRECTIONAL CENTER refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

22.    That prior hereto on September 22, 2016 and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries and damages were sustained, together with plaintiff's demands for adjustment thereof was duly served on the claimant's behalf on the Comptroller of NASSAU COUNTY SHERIFF'S DEPARTMENT and that thereafter said Comptroller for NASSAU COUNTY SHERIFF'S DEPARTMENT refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

23.    That prior hereto on September 22, 2016 and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries and damages were sustained, together with plaintiff's demands for adjustment thereof was duly served on the claimant's behalf on the Comptroller of NASSAU HEALTH CARE CORPORATION and that thereafter said Comptroller for NASSAU HEALTH CARE CORPORATION refused or neglected for more than thirty (30) days and up to the

commencement of this action to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

## STATUTORY HEARINGS

24.     That pursuant to General Municipal Law 50-h, a hearing was not held of the Plaintiff with reference to the instant claim by attorneys for Defendants COUNTY, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT and NASSAU HEALTH CARE CORPORATION.

25.     That a demand for a 50H hearing pursuant to General Municipal Law 50-h was made by Defendant NASSAU HEALTH CARE CORPORATION but Defendant refused to conduct said hearing until an estate representative was appointed.

26.     That the instant action is being commenced without a 50H hearing in view of the pending expiration of the statute of limitations and Plaintiff has or will file an amended Notice of Claim with the estate representative and will permit a 50H hearing to be conducted after the Summons and Complaint is filed.

27.     That the instant action is being commenced within one year and ninety days after the accrual of the cause of action hereinafter set forth, in compliance with General Municipal Law Section 50(i).

## FACTUAL ALLEGATIONS

28.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER was a department of Defendant, COUNTY.

29.     On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT was a department of Defendant, COUNTY.

30.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER was an independent municipal department of Defendant, COUNTY.

31.     On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT was an independent municipal department of Defendant, COUNTY.

32.     On June 28, 2016 through on or about July 5, 2016, Defendant NASSAU HEALTH CARE CORPORATION was a department of Defendant, COUNTY.

33.     On June 28, 2016 through on or about July 5, 2016, Defendant NASSAU HEALTH CARE CORPORATION was an independent municipal department of Defendant, COUNTY

34.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR was an independent department of Defendant, COUNTY.

35.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK was an independent department of Defendant, COUNTY.

36.     That all employees of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER were employees of Defendant COUNTY.

37.     That all employees of Defendant NASSAU COUNTY SHERRIF'S DEPARTMENT were employees of Defendant COUNTY.

38.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY owned a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

39.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY operated a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

40.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY supervised a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

41.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY maintained a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

42.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER owned a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

43.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER operated a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

44.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER supervised a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

45.     On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER maintained a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

46.     On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT owned a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

47.     On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT operated a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

48.     On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT supervised a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

49.     On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT maintained a correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

50.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

51.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

52.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

53.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY.

54.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY.

55.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY.

56.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

57.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR supervised a health care facility within the correctional center housing individuals placed under

arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

58.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

59.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

60.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

61.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

62.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

63.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

64.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK maintained a health care facility within the correctional center housing individuals placed

under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554.

65.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY.

66.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY.

67.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY.

68.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

69.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

70.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

71.     On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated a health care facility within the correctional center housing individuals placed

under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

72.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK supervised a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

73.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK maintained a health care facility within the correctional center housing individuals placed under arrest by law enforcement officials at 100 Carman Avenue, East Meadow, New York 11554 pursuant to an agreement with Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

74.    On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER operated the aforementioned correctional center in furtherance of the business and obligations of Defendant COUNTY.

75.    On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT operated the aforementioned correctional center in furtherance of the business and obligations of Defendant COUNTY.

76.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated the aforementioned health care facility within the correctional center in furtherance of the business and obligations of Defendant COUNTY.

77.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated the aforementioned health care facility within the correctional center in furtherance of the business and obligations of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

78.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated the aforementioned health care facility within the correctional center in furtherance of the business and obligations of Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

79.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated the aforementioned health care facility within the correctional center in furtherance of the business and obligations of Defendant COUNTY.

80.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated the aforementioned health care facility within the correctional center in furtherance of the business and obligations of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

81.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated the aforementioned health care facility within the correctional center in furtherance of the business and obligations of Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

82.    On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER operated the aforementioned correctional center in furtherance of the business and obligations of Defendant COUNTY, staffed and operated by COUNTY employees.

83.    On August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT operated the aforementioned correctional center in furtherance of the business and obligations of Defendant COUNTY staffed and operated by COUNTY employees.

84.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR operated the health care facility within the aforementioned correctional center in furtherance of the business and obligations of Defendant COUNTY staffed and operated by COUNTY employees.

85.    On August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK operated the health care facility within the aforementioned correctional center in furtherance of the business and obligations of Defendant COUNTY staffed and operated by COUNTY employees.

86.    On August 21, 2015 through on or about June 28, 2016, Defendant COUNTY as part of its municipal services, operated a police department and correctional center.

87.    On August 21, 2015, decedent EMANUEL MCELVEEN came into custody of Defendant COUNTY.

88.     On August 21, 2015, decedent EMANUEL MCELVEEN came into custody of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

89.     On August 21, 2015, decedent EMANUEL MCELVEEN came into custody of Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

90.     On August 21, 2015, decedent EMANUEL MCELVEEN came into care and custody of Defendant ARMOR.

91.     On August 21, 2015, decedent EMANUEL MCELVEEN came into care and custody of Defendant ARMOR NEW YORK.

92.     On August 21, 2015 through on or about June 28, 2016, decedent EMANUEL MCELVEEN was subject to the supervision and control of the Defendant COUNTY.

93.     On August 21, 2015 through on or about June 28, 2016, decedent EMANUEL MCELVEEN was subject to the supervision and control of the Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

94.     On August 21, 2015 through on or about June 28, 2016, decedent EMANUEL MCELVEEN was subject to the supervision and control of the Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

95.     On August 21, 2015 through on or about June 28, 2016, decedent EMANUEL MCELVEEN was subject to the supervision and control of the Defendant ARMOR.

96.     On August 21, 2015 through on or about June 28, 2016, decedent EMANUEL MCELVEEN was subject to the supervision and control of the Defendant ARMOR NEW YORK.

97.     Decedent, EMANUEL MCELVEEN remained in the control and supervision of Defendant COUNTY through June 28, 2016.

98.     Decedent, EMANUEL MCELVEEN remained in the control and supervision of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER through June 28, 2016.

99.     Decedent, EMANUEL MCELVEEN remained in the control and supervision of Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT through June 28, 2016.

100.     Decedent, EMANUEL MCELVEEN remained in the control and supervision of Defendant ARMOR through June 28, 2016.

101.    Decedent, EMANUEL MCELVEEN remained in the control and supervision of Defendant ARMOR NEW YORK through June 28, 2016.

102.    Pursuant to CPLR Section 1602(2)(iv), Defendants, COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC. and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC. are jointly and severally liable for all of plaintiff' damages, including but not limited to plaintiff' damages, including but not limited to plaintiffs' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC., owed plaintiffs a non-delegable duty of care.

103.    Pursuant to CPLR Section 1602(2)(iv), Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC. are jointly and severally liable for all of plaintiff' damages, including but not limited to plaintiff' damages, including but not limited to plaintiffs' non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC. are vicariously liable for the negligent acts and omissions of each other.

104.    Pursuant to CPLR Section 1602(5), Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW

YORK, INC. are jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC.'s wrongful conduct was intentional.

105.    Pursuant to CPLR Section 1602(7), Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC. are jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, NASSAU HEALTH CARE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC. acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of plaintiffs' injuries and damages.

<u>**COUNT I**</u>

106.    That at all times hereinafter mentioned, plaintiff repeats, reiterates and realleges each and every paragraph of the within Complaint with the same force and effect as if set forth herein at length.

107.    On or about August 21, 2015 through on or about June 28, 2016, Defendant COUNTY and/or its agents evaluated and examined decedent, EMANUEL MCELVEEN regarding EMANUEL MCELVEEN's fitness for confinement in a penal custodial setting.

108.    On or about August 21, 2015 through on or about June 28, 2016, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER and/or its agents evaluated and examined

decedent, EMANUEL MCELVEEN regarding EMANUEL MCELVEEN's fitness for confinement in a penal custodial setting.

109.    On or about August 21, 2015 through on or about June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT and/or its agents examined decedent, EMANUEL MCELVEEN regarding EMANUEL MCELVEEN's fitness for confinement in a penal custodial setting.

110.    On or about August 21, 2015 through on or about June 28, 2016, Defendant ARMOR and/or its agents evaluated and examined decedent, EMANUEL MCELVEEN regarding EMANUEL MCELVEEN's fitness for confinement in a penal custodial setting.

111.    On or about August 21, 2015 through on or about June 28, 2016, Defendant ARMOR NEW YORK and/or its agents evaluated and examined decedent, EMANUEL MCELVEEN regarding EMANUEL MCELVEEN's fitness for confinement in a penal custodial setting.

112.    During the period of approximately August 21, 2015 through June 28, 2016 EMANUEL MCELVEEN remained in the custody of Defendant COUNTY.

113.    During the period of approximately August 21, 2015 through June 28, 2016 EMANUEL MCELVEEN remained in the custody of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER.

114.    During the period of approximately August 21, 2015 through June 28, 2016 EMANUEL MCELVEEN remained in the custody of Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT.

115.    During the period of approximately August 21, 2015 through June 28, 2016 EMANUEL MCELVEEN remained under the care and in the custody of Defendant ARMOR.

116.    During the period of approximately August 21, 2015 through June 28, 2016 EMANUEL MCELVEEN remained under the care and in the custody of Defendant ARMOR NEW YORK.

117.    During the period that EMANUEL MCELVEEN was in the custody of Defendant, COUNTY, as set forth above, said Defendant had an obligation to examine and monitor the wellness of and protect, EMANUEL MCELVEEN.

118.    During the period that EMANUEL MCELVEEN was in the custody of Defendant, COUNTY OF NASSAU CORRECTIONAL CENTER, as set forth above, said Defendant had an obligation to examine and monitor the wellness of and protect, EMANUEL MCELVEEN.

119.    During the period that EMANUEL MCELVEEN was in the custody of Defendant, NASSAU COUNTY SHERIFF'S DEPARTMENT, as set forth above, said Defendant had an obligation to examine and monitor the wellness of and protect, EMANUEL MCELVEEN.

120.    During the period that EMANUEL MCELVEEN was in the custody of Defendant, ARMOR, as set forth above, said Defendant had an obligation to examine and monitor the wellness of and protect, EMANUEL MCELVEEN.

121.    During the period that EMANUEL MCELVEEN was in the custody of Defendant, ARMOR NEW YORK, as set forth above, said Defendant had an obligation to examine and monitor the wellness of and protect, EMANUEL MCELVEEN.

122.    During the period of approximately August 21, 2015 through June 28, 2016 Defendant COUNTY continued to have an obligation to, and in fact did, supervise, monitor, inspect and control the well-being of EMANUEL MCELVEEN.

123.    During the period of approximately August 21, 2015 through June 28, 2016 Defendant COUNTY OF NASSAU CORRECTIONAL CENTER continued to have an obligation to, and in fact did, supervise, monitor, inspect and control the well-being of EMANUEL MCELVEEN.

124.    During the period of approximately August 21, 2015 through June 28, 2016 Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT continued to have an obligation to, and in fact did, supervise, monitor, inspect and control the well-being of EMANUEL MCELVEEN.

125.    During the period of approximately August 21, 2015 through June 28, 2016 Defendant ARMOR continued to have an obligation to, and in fact did, supervise, monitor, inspect and control the well-being of EMANUEL MCELVEEN.

126.    During the period of approximately August 21, 2015 through June 28, 2016 Defendant ARMOR NEW YORK continued to have an obligation to, and in fact did, supervise, monitor, inspect and control the well-being of EMANUEL MCELVEEN.

127.    That at or prior to taking custody, control and supervision of EMANUEL MCELVEEN Defendant COUNTY was aware that EMANUEL MCELVEEN had a history of drug addiction and mental disorders.

128.    That at or prior to taking custody, control and supervision of EMANUEL MCELVEEN Defendant COUNTY OF NASSAU CORRECTIONAL CENTER, was aware that EMANUEL MCELVEEN had a history of health problems.

129.    That at or prior to taking custody, control and supervision of EMANUEL MCELVEEN Defendants NASSAU COUNTY SHERIFF'S DEPARTMENT was aware that EMANUEL MCELVEEN had a history of health problems.

130.    That at or prior to taking custody, control and supervision of EMANUEL MCELVEEN Defendant ARMOR was aware that EMANUEL MCELVEEN had a history of health problems.

131.    That at or prior to taking custody, control and supervision of EMANUEL MCELVEEN Defendant ARMOR NEW YORK was aware that EMANUEL MCELVEEN had a history of health problems.

132.    That after taking custody, control and supervision of EMANUEL MCELVEEN Defendant COUNTY was aware that EMANUEL MCELVEEN had a history of health problems.

133.    That after taking custody, control and supervision of EMANUEL MCELVEEN Defendant COUNTY OF NASSAU CORRECTIONAL CENTER, was aware that EMANUEL MCELVEEN had a history of health problems.

134.    That after to taking custody, control and supervision of EMANUEL MCELVEEN Defendants NASSAU COUNTY SHERIFF'S DEPARTMENT was aware that EMANUEL MCELVEEN had a history of health problems.

135.    That after taking custody, control and supervision of EMANUEL MCELVEEN Defendant ARMOR was aware that EMANUEL MCELVEEN had a history of health problems.

136.    That after taking custody, control and supervision of EMANUEL MCELVEEN Defendant ARMOR NEW YORK was aware that EMANUEL MCELVEEN had a history of health problems.

137.    That on August 21, 2015 through June 28, 2016, while in the care, custody, control and supervision of Defendant, COUNTY, decedent EMANUEL MCELVEEN became extremely ill resulting in his death.

138.    That on August 21, 2015 through June 28, 2016, while in the care, custody, control and supervision of Defendant, COUNTY OF NASSAU CORRECTIONAL CENTER, decedent EMANUEL MCELVEEN became extremely ill resulting in his death.

139.    That on August 21, 2015 through June 28, 2016, while in the care, custody, control and supervision of Defendant, NASSAU COUNTY SHERIFF'S DEPARTMENT, decedent EMANUEL MCELVEEN became extremely ill resulting in his death.

140.    That on August 21, 2015 through June 28, 2016, while in the care, custody, control and supervision of Defendant, ARMOR, decedent EMANUEL MCELVEEN became extremely ill resulting in his death.

141.    That on August 21, 2015 through June 28, 2016, while in the care, custody, control and supervision of Defendant, ARMOR NEW YORK, decedent EMANUEL MCELVEEN became extremely ill resulting in his death.

142.    That the aforementioned incident of harm and eventual death, suffered by decedent EMANUEL MCELVEEN occurred as the result of the negligence, carelessness and recklessness of Defendant COUNTY concerning its custody, supervision and evaluation of the health and medical treatment of EMANUEL MCELVEEN.

143.    That the aforementioned incident of harm and eventual death, suffered by decedent EMANUEL MCELVEEN occurred as the result of the negligence, carelessness and recklessness of Defendant COUNTY OF NASSAU CORRECTIONAL CENTER concerning its custody, supervision and evaluation of the health and medical treatment of EMANUEL MCELVEEN.

144.    That the aforementioned incident of harm and eventual death, suffered by decedent EMANUEL MCELVEEN occurred as the result of the negligence, carelessness and recklessness of Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT concerning its custody, supervision and evaluation of the health and medical treatment of EMANUEL MCELVEEN.

145.    That the aforementioned incident of harm and eventual death, suffered by decedent EMANUEL MCELVEEN occurred as the result of the negligence, carelessness and recklessness of Defendant ARMOR concerning its custody, supervision and evaluation of the health and medical treatment of EMANUEL MCELVEEN.

146.    That the aforementioned incident of harm and eventual death, suffered by decedent EMANUEL MCELVEEN occurred as the result of the negligence, carelessness and recklessness of Defendant ARMOR NEW YORK concerning its custody, supervision and evaluation of the health and medical treatment of EMANUEL MCELVEEN.

147.    By reason of the foregoing, decedent EMANUEL MCELVEEN became extremely ill and ultimately led to his death.

148.    The limitations on liability is not limited pursuant to Section 1601 of the CPLR by reason of one or more of the exemptions of CPLR Section 1602 for the reasons set forth at the end of this pleading.

149.    As a result of the aforesaid, Plaintiff's decedent, has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## COUNT II

150.    That at all times hereinafter mentioned, Plaintiff, repeats, reiterates and realleges each and every paragraph of the within Complaint with the same force and effect as if set forth herein at length.

151.    On July 5, 2016, decedent EMANUEL MCELVEEN expired from his injuries suffered due to lack of treatment as set forth above.

152.    By reason of the aforementioned negligence, carelessness and recklessness of the Defendants, as set forth above, decedent, EMANUEL MCELVEEN expired from his medical condition on July 5, 2016.

153.    The limitations on liability is not limited pursuant to Section 1601 of the CPLR by reason of one or more of the exemptions of CPLR Section 1602 for the reasons set forth at the end of this pleading.

154.    As a result of the foregoing, Plaintiff was damaged and injured.

155.    As a result of the foregoing, Plaintiff was seriously damaged and seriously injured.

156.    That because of the above stated premise, Plaintiff was damaged in an amount exceeding the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.

**COUNT III**
**CIVIL RIGHTS VIOLATIONS**

157.    That at all times hereinafter mentioned, Plaintiff, repeats, reiterates and realleges each and every paragraph of the within Complaint with the same force and effect as if set forth herein at length.

158.    During the period of August 21, 2015 through June 28, 2016, Defendant, COUNTY, under the color of State Law, subjected decedent to the deprivation of his rights, privileges and/or immunities secured by the constitutions of State of New York and the United States of America, as well as by other state ordinances, statutes, codes and rules, including 42 USC 1981, 1983, 1985 and 28 USC 1343.

159.    During the period of August 21, 2015 through June 28, 2016, Defendant, COUNTY OF NASSAU CORRECTIONAL CENTER, under the color of State Law, subjected decedent to the deprivation of his rights, privileges and/or immunities secured by the constitutions of State of New York and the United States of America, as well as by other state ordinances, statutes, codes and rules, including 42 USC 1981, 1983, 1985 and 28 USC 1343.

160.    During the period of August 21, 2015 through June 28, 2016, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT, under the color of State Law, subjected decedent to the deprivation of his rights, privileges and/or immunities secured by the constitutions of State of New York and the United States of America, as well as by other state ordinances, statutes, codes and rules, including 42 USC 1981, 1983, 1985 and 28 USC 1343.

161.    During the period of August 21, 2015 through June 28, 2016, Defendant, ARMOR, under the color of State Law, subjected decedent to the deprivation of his rights, privileges and/or immunities secured by the constitutions of State of New York and the United States of America, as well as by other state ordinances, statutes, codes and rules, including 42 USC 1981, 1983, 1985 and 28 USC 1343.

162.    During the period of August 21, 2015 through June 28, 2016, Defendant, ARMOR NEW YORK, under the color of State Law, subjected decedent to the deprivation of his rights, privileges and/or immunities secured by the constitutions of State of New York and the United States of America, as well as by other state ordinances, statutes, codes and rules, including 42 USC 1981, 1983, 1985 and 28 USC 1343.

163.    The aforementioned actions of Defendant, COUNTY, in depriving decedent of his civil rights, occurred while decedent was in custody of said Defendants after his arrest and confinement, and occurred by reason of the improper custodial actions taken by employees of said Defendants in the course of their employment for said Defendants.

164.    The aforementioned actions of Defendant, COUNTY OF NASSAU CORRECTIONAL CENTER, in depriving decedent of his civil rights, occurred while decedent was in custody of said Defendants after his arrest and confinement, and occurred by reason of the improper custodial actions taken by employees of said Defendants in the course of their employment for said Defendants.

165.    The aforementioned actions of Defendant, NASSAU COUNTY SHERIFF'S DEPARTMENT, in depriving decedent of his civil rights, occurred while decedent was in custody of said Defendants after his arrest and confinement, and occurred by reason of the improper

custodial actions taken by employees of said Defendants in the course of their employment for said Defendants.

166.    The aforementioned actions of Defendant, ARMOR, in depriving decedent of his civil rights, occurred while decedent was in custody of said Defendants after his arrest and confinement, and occurred by reason of the improper custodial actions taken by employees of said Defendants in the course of their employment for said Defendants.

167.    The aforementioned actions of Defendant, ARMOR NEW YORK, in depriving decedent of his civil rights, occurred while decedent was in custody of said Defendants after his arrest and confinement, and occurred by reason of the improper custodial actions taken by employees of said Defendants in the course of their employment for said Defendants.

168.    The actions of the aforementioned Defendants taken in connection with the civil rights violations alleged herein resulted from a pattern and custom followed by said Defendants.

169.    As a result of the foregoing, plaintiff's decedent was damaged and injured.

170.    As a result of the foregoing, plaintiff's decedent was seriously damaged and seriously injured.

171.    That because of the above stated premise plaintiff was damaged in an amount exceeding the jurisdictional limits of all lower Courts which would otherwise have jurisdiction.

## COUNT IV
## MEDICAL MALPRACTICE

172.    That at all times hereinafter mentioned, Plaintiff repeats, reiterates and realleges each and every paragraph of the within Complaint with the same force and effect as if set forth herein at length.

173.    That at all times hereinafter mentioned, Defendant COUNTY, its agents, servants and/or employees, undertook and agreed to render medical care to Plaintiff's decedent while in their custody and did render certain medical treatment commencing on or about August 21, 2015 through June 28, 2016.

174.    That at all times hereinafter mentioned, Defendant COUNTY OF NASSAU CORRECTIONAL CENTER, its agents, servants and/or employees, undertook and agreed to

render medical care to Plaintiff's decedent while in their custody and did render certain medical treatment commencing on or about August 21, 2015 through June 28, 2016.

175.    That at all times hereinafter mentioned, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT, its agents, servants and/or employees, undertook and agreed to render medical care to Plaintiff's decedent while in their custody and did render certain medical treatment commencing on or about August 21, 2015 through June 28, 2016.

176.    That at all times hereinafter mentioned, Defendant NASSAU HEALTH CARE CORPORATION, its agents, servants and/or employees, undertook and agreed to render medical care to Plaintiff's decedent while in their custody and did render certain medical treatment commencing on or about June 28, 2016 through July 5, 2016.

177.    That at all times hereinafter mentioned, Defendant ARMOR, its agents, servants and/or employees, undertook and agreed to render medical care to Plaintiff's decedent while in their custody and did render certain medical treatment commencing on or about August 21, 2015 through June 28, 2016.

178.    That at all times hereinafter mentioned, Defendant ARMOR NEW YORK, its agents, servants and/or employees, undertook and agreed to render medical care to Plaintiff's decedent while in their custody and did render certain medical treatment commencing on or about August 21, 2015 through June 28, 2016.

179.    That the medical and/or surgical treatment, services and advised rendered to Plaintiff's decedent by Defendant COUNTY, its agents, servants and/or employees, were negligently, carelessly, recklessly and grossly negligently performed and were rendered in a manner which departed from good and accepted medical and surgical practice then and there prevailing and constituted medical malpractice.

180.    That the medical and/or surgical treatment, services and advised rendered to Plaintiff's decedent by Defendant COUNTY OF NASSAU CORRECTIONAL CENTER, its agents, servants and/or employees, were negligently, carelessly, recklessly and grossly negligently performed and were rendered in a manner which departed from good and accepted medical and surgical practice then and there prevailing and constituted medical malpractice

181.    That the medical and/or surgical treatment, services and advised rendered to Plaintiff's decedent by Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT, its agents, servants and/or employees, were negligently, carelessly, recklessly and grossly negligently performed and were rendered in a manner which departed from good and accepted medical and surgical practice then and there prevailing and constituted medical malpractice.

182.    That the medical and/or surgical treatment, services and advised rendered to Plaintiff's decedent by Defendant NASSAU HEALTH CARE CORPORATION, its agents, servants and/or employees, were negligently, carelessly, recklessly and grossly negligently performed and were rendered in a manner which departed from good and accepted medical and surgical practice then and there prevailing and constituted medical malpractice.

183.    That the medical and/or surgical treatment, services and advised rendered to Plaintiff's decedent by Defendant ARMOR, its agents, servants and/or employees, were negligently, carelessly, recklessly and grossly negligently performed and were rendered in a manner which departed from good and accepted medical and surgical practice then and there prevailing and constituted medical malpractice.

184.    That the medical and/or surgical treatment, services and advised rendered to Plaintiff's decedent by Defendant ARMOR NEW YORK, its agents, servants and/or employees, were negligently, carelessly, recklessly and grossly negligently performed and were rendered in a manner which departed from good and accepted medical and surgical practice then and there prevailing and constituted medical malpractice.

185.    That Defendant COUNTY, its agents, servants and/or employees, negligently, carelessly, recklessly and grossly negligently failed to properly test, diagnose and treat Plaintiff's decedent which adversely affected the health and well-being of the decedent.

186.    That Defendant COUNTY OF NASSAU CORRECTIONAL CENTER, its agents, servants and/or employees, negligently, carelessly, recklessly and grossly negligently failed to properly test, diagnose and treat Plaintiff's decedent which adversely affected the health and well-being of the decedent.

187.    That Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT, its agents, servants and/or employees, negligently, carelessly, recklessly and grossly negligently failed to properly test, diagnose and treat Plaintiff's decedent which adversely affected the health and well-being of the decedent.

188.    That Defendant NASSAU HEALTH CARE CORPORATION, its agents, servants and/or employees, negligently, carelessly, recklessly and grossly negligently failed to properly test, diagnose and treat Plaintiff's decedent which adversely affected the health and well-being of the decedent.

189.    That Defendant ARMOR, its agents, servants and/or employees, negligently, carelessly, recklessly and grossly negligently failed to properly test, diagnose and treat Plaintiff's decedent which adversely affected the health and well-being of the decedent.

190.    That Defendant ARMOR NEW YORK, its agents, servants and/or employees, negligently, carelessly, recklessly and grossly negligently failed to properly test, diagnose and treat Plaintiff's decedent which adversely affected the health and well-being of the decedent.

191.    That Defendants, their agents, servants, partners and/or employees were negligent in the care rendered for and on behalf of the Plaintiff's decedent EMANUEL McELVEEN in negligently failing and neglecting to use reasonable care in the services and care rendered for an on behalf of the Plaintiff's decedent; in negligently and carelessly failing and neglecting to heed Plaintiff's decedent's condition; negligently and carelessly departing from good and accepted medical practice in the treatment rendered upon  Plaintiff's decedent; in failing to perform indicated procedures and/or improperly performing said indicated procedures;  in negligently departing from good and accepted hospital practice and procedures in services rendered to Plaintiff's decedent; in failing to timely diagnose and treat Plaintiff's decedent; in failing to treat and realize the consequences of the complications associated with Plaintiff's decedent's condition; in failing to possess the knowledge and skill to properly treat Plaintiffs decedent's condition; in carelessly and negligently performing routine and/or required testing; in failing to perform routine and/or required testing; in carelessly and negligently failing to properly treat Plaintiffs decedent's

condition; in negligently departing from accepted practice in failing to timely diagnose Plaintiff's decedent's condition; and in otherwise being careless, negligent, reckless and grossly negligent.

192.    That the care and treatment rendered by Defendants, their agents, servants and/or employees, to Plaintiff's decedent was negligent, careless, reckless, grossly negligent and committed acts and/or omissions constituting professional negligence and were deviations from accepted medical standards and practices in the community then and there prevailing which deviations from accepted practices and standards resulted in the serious permanent injuries and ultimately his death on July 5, 2016.

193.    That by reason of the foregoing, Plaintiff's decedent EMANUEL McELVEEN sustained severe and permanent personal injuries; became sick, sore, lame and disabled; suffered mental anguish and ultimately died on July 5, 2016.

## COUNT IV
## WRONGFUL DEATH

194.    That at all times hereinafter mentioned, Plaintiff, repeats, reiterates and realleges each and every paragraph of the within Complaint with the same force and effect as if set forth herein at length.

195.    That by reason of the foregoing, Plaintiff's decedent sustained severe bodily injury resulting in Plaintiff decedent's wrongful death on July 5, 2016.

196.    That as a result of the foregoing, the Plaintiff's decedent left surviving next of kin and distributees.

197.    That by reason of the foregoing, decedent's next of kin and distributees sustained pecuniary loss and all other damages as allowed by statutes, rules, regulations, ordinances and case law.

198.    That as a result of the foregoing, the Plaintiff decedent's estate became liable for and expended money for funeral and other expenses.

199.    That the amount of damages sought herein exceeds the jurisdictional amounts of all lower Courts which would otherwise have jurisdiction, requiring therefore the jurisdiction of the instant court.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff requests that this Court enter judgment against the Defendants providing the following relief:

(a)    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering and permanent personal injuries sustained by deceased plaintiff, health care costs, medical monitoring, together with interests and costs as provided by law;

(b)    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff's decedent in an amount sufficient to punish Defendants and deter future similar conduct;

(c)    Awarding Plaintiff reasonable attorneys' fees;

(d)    Awarding Plaintiff the costs of these proceedings; and

(e)    Such other and further relief as this Courts deems just and proper.

Dated: Port Washington, New York
       September 26, 2017

                                                Yours, etc.,


                                                By: Nicholas E. Warywoda (NW6968)
                                                Parker Waichman, LLP
                                                Attorneys for Plaintiff
                                                6 Harbor Park Drive
                                                Port Washington, NY 11050
                                                (516)466-6500
                                                File No. 7010653

**INDIVIDUAL VERIFICATION**

STATE OF NEW YORK    )

COUNTY OF NASSAU    )    SS.:

Jeffrey E. DeLuca, Public Administrator of Nassau County, being duly sworn, deposes and says:

I am, in my capacity as Public Administrator, the Plaintiff herein; I have read the annexed COMPLAINT and know the contents thereof and the same are true to my knowledge, except for those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
Jeffrey E. DeLuca, Public Administrator of Nassau County

Sworn to before me this 20ᵗʰ day

of  September , 2017

_____
Notary Public

DOMENICA LEONE
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY
LIC. #01LE6095435
COMM. EXP. 6 / 12 / 20