Contract ID# CQCC11000005
CLCC15000006



Department: N. C..Sheriff's Dept.

*E-96-15*

# Contract Details

SERVICE:  Comprehensive Inmate Health Care Services

NIFS ID # :CLCC15000006    NIFS  Entry Date: 4/28/15    Term: from  6/1/15  to  5/31/17

| New ☐ Renewal ☒ | | 1) Mandated Program: | Yes ☐ | No ☐ |
|---|---|---|---|---|
| Amendment | | 2) Comptroller Approval Form Attached: | Yes ☐ | No ☐ |
| Time Extension ☐ | | 3) CSEA Agreement § 32 Compliance Attached: | Yes ☐ | No ☐ |
| Addl. Funds ☐ | | 4) Vendor Ownership & Mgmt. Disclosure Attached: | Yes ☐ | No ☐ |
| Blanket Resolution ☐ RES# | | 5) Insurance Required | Yes ☐ | No ☐ |

## Agency Information

| Vendor | | County Department |
|---|---|---|
| **Name** Armor Correctional Health Services of NY, Inc. | **Vendor ID#** 611642662-01 | **Department Contact** Kathleen Kelly |
| **Address** 4900 S.W. 72nd Ave. Suite 400 Miami, FL 33155 | **Contact Person** Karen Davies, V.P. | **Address** Nassau County Correctional Center 100 Carman Ave. East Meadow, NY  11554 |
| | **Phone** 954-649-3043 e-mail: | **Phone** 516-572-3810 |

## Routing Slip

| DATE Rec'd | DEPARTMENT | Internal Verification | DATE Appv'd & Fw'd | SIGNATURE | Leg. Approval Required |
|---|---|---|---|---|---|
| | Department | NIFS Entry (Dept) ☐ NIFS Appvl (Dept. Head) ☐ Contractor Registered | 4/31/15 | | |
| | OMB | NIFS Approval (Contractor Registered) ☐ | 5/4/15 | | Yes ☐ No ☐ Not required if blanket resolution |
| | County Attorney | CA  RE & Insurance Verification ☐ | 05/4/2015 | | |
| | County Attorney | CA Approval as to form ☐ | 05/4/2015 | | Yes ☐ No ☐ |
| | Legislative Affairs | Fw'd Original Contract to CA ☐ | 5/6/15 | | |
| | County Attorney | NIFS Approval ☐ | | | N/A ☐☐ |
| | Comptroller | NIFS Approval ☐ | | | |
| 5/4/15 | County Executive | Notarization ☐ Filed with Clerk of the Leg. ☐ | 5/7/15 | | |

Contract ID# <u>CQCC11000005</u>
CLCC15000006

Department: N. C..Sheriff's Dept.

# Contract Summary

| | |
|---|---|
| **Description:** | **Comprehensive Inmate Health Care Services 6/1/15 to 5/31/17** |

Purpose:
To renew the original agreement for an additional two years pursuant to Section 1, Term of the original agreement.

Method of Procurement:
N/A

*2 additional years which adds to be 4 year original terms. Appears to be an acceptable departure from the RFP and original contract terms, particularly given that corrections anticipates doing a new RFP.* (NB)

Procurement History:
An RFP was published on 7/30/09. Contractor was found to be the most responsible/qualified bidder with the most reasonable costs.

Description of General Provisions:
Contractor will continue to provide comprehensive medical, mental health and ancillary services to inmates in the custody of the Nassau County Sheriff's Department.

Impact on Funding / Price Analysis:
Additional funds are required for the renewal period of two years, with a budget impact of ▓▓▓▓▓ per year.

Change in Contract from Prior Procurement:
Contractor is providing additional staff to provide services, and has added a service.

Recommendation: Approve as submitted

# Advisement Information

| BUDGET CODES | |
|---|---|
| Fund: | GEN |
| Control: | 10 |
| Resp: | 1320 |
| Object: | 524 |
| Transaction: | CA |

| FUNDING SOURCE | | AMOUNT |
|---|---|---|
| Revenue Contract | ☐ | XXXXXXX |
| County | | ▓ |
| Federal | | $ |
| State | | $ |
| Capital | | $ |
| Other | | $ |
| | TOTAL | ▓ |

| LINE | INDEX/OBJECT CODE | AMOUNT |
|---|---|---|
| 1 | CCGEN1320/DE524 | ▓ |
| 2 | | $ |
| 3 | | $ |
| 4 | | $ |
| 5 | | $ |
| 6 | | $ |
| | TOTAL | ▓ |

| RENEWAL | |
|---|---|
| % Increase | |
| % Decrease | |

Document Prepared By: Kathleen Kelly/ Capt. Keith Sather    Date: 4/28/15

| NIFS Certification | Comptroller Certification | County Executive Approval |
|---|---|---|
| I certify that this document was accepted into NIFS. | I certify that an unencumbered balance sufficient to cover this contract is present in the appropriation to be charged. | Name |
| Name | Name | Date 5/4/15 |
| | | (For Office Use Only) |
| Date | Date | E #: |

PR5254 (1/06)

Contract ID# CQCC11000005
CLCC15000006



Department: N. C..Sheriff's Dept.

# Contract Summary

| | |
|---|---|
| **Description:** | **Comprehensive Inmate Health Care Services 6/1/15 to 5/31/17** |

**Purpose:**
To renew the original agreement for an additional two years pursuant to Section 1, Term of the original agreement.

**Method of Procurement:**
N/A

*2 additional years, join adds to be 4 year original term. Appears to be an acceptable departure from the RFP and original contract terms, particularly given that corrections contemplates doing a new RFP. (NB)*

**Procurement History:**
An RFP was published on 7/30/09. Contractor was found to be the most responsible/qualified bidder with the most reasonable costs.

**Description of General Provisions:**
Contractor will continue to provide comprehensive medical, mental health and ancillary services to inmates in the custody of the Nassau County Sheriff's Department.

**Impact on Funding / Price Analysis:**
Additional funds are required for the renewal period of two years, with a budget impact of ▓▓▓▓▓▓▓ per year.

**Change in Contract from Prior Procurement:**
Contractor is providing additional staff to provide services, and has added a service.

**Recommendation:** Approve as submitted

# Advisement Information

| BUDGET CODES | |
|---|---|
| Fund: | GEN |
| Control: | 10 |
| Resp: | 1320 |
| Object: | 524 |
| Transaction: | CA |

| FUNDING SOURCE | AMOUNT |
|---|---|
| Revenue Contract ☐ | XXXXXXX |
| County | $ ▓▓ |
| Federal | $ |
| State | $ |
| Capital | $ |
| Other | $ |
| TOTAL | ▓▓▓▓ |

| LINE | INDEX/OBJECT CODE | AMOUNT |
|---|---|---|
| 1 | CCGEN1320/DE524 | ▓▓▓▓ |
| 2 | | $ |
| 3 | | $ |
| 4 | | $ |
| 5 | | $ |
| 6 | | $ |
| | TOTAL | ▓▓▓▓ |

| RENEWAL | |
|---|---|
| % Increase | |
| % Decrease | |

Document Prepared By: Kathleen Kelly/ Capt. Keith Sather      Date: 4/28/15

| NIFS Certification | Comptroller Certification | County Executive Approval |
|---|---|---|
| I certify that this document was accepted into NIFS. | I certify that an unencumbered balance sufficient to cover this contract is present in the appropriation to be charged. | Name _CW_ |
| Name | Name | Date 5/4/15 |
| Date | Date | (For Office Use Only) |
| | | E #: |

PR5254 (1/06)                    LBBS (K-3) 000003

LBBS (K-3) 000004

RULES RESOLUTION NO.      – 2015

A RESOLUTION AUTHORIZING THE COUNTY EXECUTIVE
TO EXECUTE AN AMENDMENT TO A PERSONAL SERVICES
AGREEMENT BETWEEN THE COUNTY OF NASSAU ACTING ON
BEHALF OF THE NASSAU COUNTY SHERIFF'S DEPARTMENT AND
ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC.

WHEREAS, the County has negotiated an amendment to a personal services agreement with Armor Correctional Health Services of New York, Inc. for services in connection with providing medical, mental health, dental, and ancillary services to inmates in the custody of the Nassau County Sheriff's Department and/or incarcerated at the Nassau County Correctional Center, a copy of which is on file with the Clerk of the Legislature; now, therefore, be it

RESOLVED, that the Rules Committee of the Nassau County Legislature authorizes the County Executive to execute the said amendment to the agreement with Armor Correctional Health Services of New York, Inc.

LBBS (K-3) 000006

*George Maragos*
*Comptroller*



**OFFICE OF THE COMPTROLLER**
240 Old Country Road
Mineola, New York 11501

# COMPTROLLER APPROVAL FORM FOR PERSONAL, PROFESSIONAL OR HUMAN SERVICES CONTRACTS

*Attach this form along with all personal, professional or human services contracts, contract renewals, extensions and amendments.*

## CONTRACTOR NAME: <u>Armour Correctional Health Serevices of New York, Inc.</u>

## CONTRACTOR ADDRESS: <u>4960 S.W. 72nd Ave., Ste 400, Miami, FL 33155</u>

## FEDERAL TAX ID <u>#: 61-1642662</u>

---

***Instructions:*** **Please check the appropriate box ("☑") after one of the following roman numerals, and provide all the requested information.**

**I. ☐ The contract was awarded to the lowest, responsible bidder after advertisement for sealed bids.** The contract was awarded after a request for sealed bids was published in_____ [newspaper] on _____ [date]. The sealed bids were publicly opened on _____ [date]. _____ [#] of sealed bids were received and opened.

**II. ☐ The contractor was selected pursuant to a Request for Proposals.**
The Contract was entered into after a written request for proposals was issued on _____ [date]. Potential proposers were made aware of the availability of the RFP by_____ [newspaper advertisement, posting on website, mailing, etc.]. _____ [#] of potential proposers requested copies of the RFP. Proposals were due on _____ [date]. _____[#] proposals were received and evaluated. The evaluation committee consisted of:_____

_____ [list members]. The proposals were scored and ranked. As a result of the scoring and ranking (attached), the highest-ranking proposer was selected.

LBBS (K-3) 000008

**III. ☐ This is a renewal, extension or amendment of an existing contract.**
The contract was originally executed by Nassau County on __May 5, 2011__ [date]. This is a renewal or extension pursuant to the contract, or an amendment within the scope of the contract or RFP (copies of the relevant pages are attached). The original contract was entered into after_____

_____
_____ [describe procurement method, i.e., RFP, three proposals evaluated, etc.] Attach a copy of the most recent evaluation of the contractor's performance for any contract to be renewed or extended. If the contractor has not received a satisfactory evaluation, the department must explain why the contractor should nevertheless be permitted to continue to contract with the county.
    *See Staff Summary ( DSS )*

**IV. ☐ Pursuant to Executive Order No. 1 of 1993, as amended, at least three proposals were solicited and received. The attached memorandum from the department head describes the proposals received, along with the cost of each proposal.**

   ☐ **A.** The contract has been awarded to the proposer offering the lowest cost proposal; **OR:**

   ☐ **B.** The attached memorandum contains a detailed explanation as to the reason(s)why the contract was awarded to other than the lowest-cost proposer. The attachment includes a specific delineation of the unique skills and experience, the specific reasons why a proposal is deemed superior, and/or why the proposer has been judged to be able to perform more quickly than other proposers.

**V. ☐ Pursuant to Executive Order No. 1 of 1993 as amended, the attached memorandum from the department head explains why the department did not obtain at least three proposals.**

   ☐ **A.** There are only one or two providers of the services sought or less than three providers submitted proposals. The memorandum describes how the contractor was determined to be the sole source provider of the personal service needed or explains why only two proposals could be obtained. If two proposals were obtained, the memorandum explains that the contract was awarded to the lowest cost proposer, or why the selected proposer offered the higher quality proposal, the proposer's unique and special experience, skill, or expertise, or its availability to perform in the most immediate and timely manner.

   ☐ **B.** The memorandum explains that the contractor's selection was dictated by the terms of a federal or New York State grant, by legislation or by a court order. (Copies of the relevant documents are attached).

   ☐ **C.** Pursuant to General Municipal Law Section 104, the department is purchasing the services required through a New York State Office of General Services contract no._____, and the attached memorandum explains how the purchase is within the scope of the terms of that contract.

LBBS (K-3) 000010

☐ **D.** Pursuant to General Municipal Law Section 119-o, the department is purchasing the services required through an inter-municipal agreement.

**VI. ☐ This is a human services contract with a not-for-profit agency for which a competitive process has not been initiated.** Attached is a memorandum that explains the reasons for entering into this contract without conducting a competitive process, and details when the department intends to initiate a competitive process for the future award of these services. For any such contract, where the vendor has previously provided services to the county, attach a copy of the most recent evaluation of the vendor's performance. If the contractor has not received a satisfactory evaluation, the department must explain why the contractor should nevertheless be permitted to contract with the county.

In certain limited circumstances, conducting a competitive process and/or completing performance evaluations may not be possible because of the nature of the human services program, or because of a compelling need to continue services through the same provider. In those circumstances, attach an explanation of why a competitive process and/or performance evaluation is inapplicable.

**VII. ☐ This is a public works contract for the provision of architectural, engineering or surveying services.** The attached memorandum provides details of the department's compliance with Board of Supervisors' Resolution No.928 of 1993, including its receipt and evaluation of annual Statements of Qualifications & Performance Data, and its negotiations with the most highly qualified firms.

***In addition,*** *if this is a contract with an individual or with an entity that has only one or two employees:*
☐ a review of the criteria set forth by the Internal Revenue Service, *Revenue Ruling No.* 87-41, 1987-1 C.B. 296, attached as Appendix A to the Comptroller's Memorandum, dated February 13, 2004, concerning independent contractors and employees indicates that the contractor would not be considered an employee for federal tax purposes.

Department Head Signature

4/30/15
Date

***NOTE:*** *Any information requested above, or in the exhibit below, may be included in the county's "staff summary" form in lieu of a separate memorandum.*

*Compt. form Pers./Prof. Services Contracts: Rev. 02/04*

LBBS (K-3) 000012

# Principal Questionaire



Corractional Health Services, Inc.

## Armor Correctional Health Services

## Proposal

## Inmate Medical Services

## October 13, 2009

LBBS (K-3) 000013

LBBS (K-3) 000014

## APPENDIX D

### PRINCIPAL QUESTIONNAIRE FORM

Any individual who holds ten percent or greater ownership interest in the proposer or who is an officer of the proposer shall complete and certify a Principal Questionnaire Form. All questions on the questionnaire must be answered and the answers typewritten or printed in ink. If you need more space to answer any question, make as many photocopies of the appropriate page(s) as necessary and attach them to the questionnaire.

COMPLETE THIS QUESTIONNAIRE CAREFULLY AND COMPLETELY. FAILURE TO SUBMIT A COMPLETE QUESTIONNAIRE MAY MEAN THAT YOUR BID OR PROPOSAL WILL BE REJECTED AS NON-RESPONSIVE AND IT WILL NOT BE CONSIDERED FOR AWARD

1.  Principal Name  Jose Armas

    Business address  4960 SW 72nd Ave, Suite 400

    City/state/zip  Miami/Florida/33155

    Telephone  [redacted]

    Other present address(es) _____

    City/state/zip _____

    Telephone _____

    List of other addresses and telephone numbers attached

2.  Positions held in submitting business and starting date of each (check all applicable)

    President  0 7/ 1  9 /0 4   Treasurer ___/___/____

    Chairman of Board ___/___/___   Shareholder ___/___/____

    Chief Exec. Officer ___/___/___   Secretary ___/___/____

    Chief Financial Officer ___/___/___   Partner ___/___/____

    Vice President ___/___/____  _____ ___/___/____

    (Other)

3.  Do you have an equity interest in the business submitting the questionnaire?
    NO ___  YES x ___   If Yes, provide details.  Dr. Armas is the 100% shareholder of Armor.

4.  Are there any outstanding loans, guarantees or any other form of security or lease or any other type of contribution made in whole or in part between you and the business submitting the questionnaire?
    NO ___  YES X ___   If Yes, provide details.  Armor leases its office space in a building owned by Dr. Armas.

5.  Within the past 3 years, have you been a principal owner or officer of any business or not-for-profit organization other than the one submitting the questionnaire? NO ___  YES x ___; If Yes, provide details.

LBBS (K-3) 000016

**APPENDIX D**

6.  Has any governmental entity awarded any contracts to a business or organization listed in Section 5 in the past 3 years while you were a principal owner or officer? NO ___ YES x___ If Yes, provide details.  See attachment entitled "Awards within the past three years"

NOTE: An affirmative answer is required below whether the sanction arose automatically, by operation of law, or as a result of any action taken by a government agency.
Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.

7.  In the past (5) years, have you and/or any affiliated businesses or not-for-profit organizations listed in Section 5 in which you have been a principal owner or officer:

    a.  Been debarred by any government agency from entering into contracts with that agency? NO X___ YES ____ If Yes, provide details for each such instance.

    b.  Been declared in default and/or terminated for cause on any contract, and/or had any contract cancelled for cause? NO X___ YES ____ If Yes, provide details for each such instance.

    c.  Been denied the award of a contract and/or the opportunity to bid on a contract, including, but not limited to, failure to meet pre-qualification standards? NO X___ YES ____ If Yes, provide details for each such instance.

    d.  Been suspended by any government agency from entering into any contract with it; and/or is any action pending that could formally debar or otherwise affect such business's ability to bid or propose on contract? NO X___ YES ____ If Yes, provide details for each such instance.

8.  Have any of the businesses or organizations listed in response to Question 5 filed a bankruptcy petition and/or been the subject of involuntary bankruptcy proceedings during the past 7 years, and/or for any portion of the last 7 year period, been in a state of bankruptcy as a result of bankruptcy proceedings initiated more than 7 years ago and/or is any such business now the subject of any pending bankruptcy proceedings, whenever initiated? If 'Yes', provide details for each such instance. (Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.) No

    a)  Is there any felony charge pending against you? NO X___ YES ____ If Yes, provide details for each such charge.

    b)  Is there any misdemeanor charge pending against you? NO X___ YES ____ If Yes, provide details for each such charge.

    c)  Is there any administrative charge pending against you? NO X___ YES ____ If Yes, provide details for each such charge.

    d)  In the past 10 years, have you been convicted, after trial or by plea, of any felony, or of any other crime, an element of which relates to truthfulness or the underlying facts of which related

LBBS (K-3) 000018

## APPENDIX D

to the conduct of business? NO _X_ YES ___ If Yes, provide details for each such conviction.

   e) In the past 5 years, have you been convicted, after trial or by plea, of a misdemeanor? NO _X_ YES ___ If Yes, provide details for each such conviction.

   f) In the past 5 years, have you been found in violation of any administrative or statutory charges? NO _X_ YES ___ If Yes, provide details for each such occurrence.

9. In addition to the information provided in response to the previous questions, in the past 5 years, have you been the subject of a criminal investigation and/or a civil anti-trust investigation by any federal, state or local prosecuting or investigative agency and/or the subject of an investigation where such investigation was related to activities performed at, for, or on behalf of the submitting business entity and/or an affiliated business listed in response to Question 5? NO _X_ YES ___ If Yes, provide details for each such investigation.

10. In addition to the information provided, in the past 5 years has any business or organization listed in response to Question 5, been the subject of a criminal investigation and/or a civil anti-trust investigation and/or any other type of investigation by any government agency, including but not limited to federal, state, and local regulatory agencies while you were a principal owner or officer? NO _X_ YES ___ If Yes, provide details for each such investigation.

11. In the past 5 years, have you or this business, or any other affiliated business listed in response to Question 5 had any sanction imposed as a result of judicial or administrative proceedings with respect to any professional license held? NO _X_ YES ___ If Yes, provide details for each such instance.

12. For the past 5 tax years, have you failed to file any required tax returns or failed to pay any applicable federal, state or local taxes or other assessed charges, including but not limited to water and sewer charges? NO _X_ YES ___ If Yes, provide details for each such year.

LBBS (K-3) 000020

## APPENDIX D

### CERTIFICATION

A MATERIALLY FALSE STATEMENT WILLFULLY OR FRAUDULENTLY MADE IN CONNECTION WITH THIS QUESTIONNAIRE MAY RESULT IN RENDERING THE SUBMITTING BUSINESS ENTITY NOT RESPONSIBLE WITH RESPECT TO THE PRESENT BID OR FUTURE BIDS, AND, IN ADDITION, MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL CHARGES.

I, Jose Armas _____, being duly sworn, state that I have read and understand all the items contained in the foregoing pages of this questionnaire and the following pages of attachments; that I supplied full and complete answers to each item therein to the best of my knowledge, information and belief; that I will notify the County in writing of any change in circumstances occurring after the submission of this questionnaire and before the execution of the contract; and that all information supplied by me is true to the best of my knowledge, information and belief. I understand that the County will rely on the information supplied in this questionnaire as additional inducement to enter into a contract with the submitting business entity.

Sworn to before me this 6th day of   October    2009

_____
Notary Public

Armor Correctional Health Services
_____
Name of submitting business

Jose Armas
_____
Print name

_____
Signature

President
_____
Title

1 0 / 0 6 / 0 9
_____
Date



LISSETTE SARDINAS
MY COMMISSION # DD 470857
EXPIRES: January 11, 2010
Bonded Thru Budget Notary Services

LBBS (K-3) 000022

APPENDIX D

<u>PRINCIPAL QUESTIONNAIRE FORM</u>

Any individual who holds ten percent or greater ownership interest in the proposer or who is an officer of the proposer shall complete and certify a Principal Questionnaire Form. All questions on the questionnaire must be answered and the answers typewritten or printed in ink. If you need more space to answer any question, make as many photocopies of the appropriate page(s) as necessary and attach them to the questionnaire.

<u>COMPLETE THIS QUESTIONNAIRE CAREFULLY AND COMPLETELY. FAILURE TO SUBMIT A COMPLETE QUESTIONNAIRE MAY MEAN THAT YOUR BID OR PROPOSAL WILL BE REJECTED AS NON-RESPONSIVE AND IT WILL NOT BE CONSIDERED FOR AWARD</u>

1.  Principal Name _Bruce Teal_

    Business address _4960 SW 72nd Ave, Suite 400_

    City/state/zip _Miami/Florida/33155_

    Telephone █████████

    Other present address(es) _____

    City/state/zip _____

    Telephone _____

    List of other addresses and telephone numbers attached

2.  Positions held in submitting business and starting date of each (check all applicable)

    President ____/____/____ Treasurer ____/____/____

    Chairman of Board ____/____/____ Shareholder ____/____/____

    Chief Exec. Officer _0_9/_0_1/_0_6_ Secretary ____/____/____

    Chief Financial Officer _0_3/_0_1/_0_6_ Partner ____/____/____

    Vice President ____/____/____ _____ ____/____/____

    (Other)

3.  Do you have an equity interest in the business submitting the questionnaire?
    NO _x_ YES ___ If Yes, provide details.

4.  Are there any outstanding loans, guarantees or any other form of security or lease or any other type of contribution made in whole or in part between you and the business submitting the questionnaire?
    NO _x_ YES ___ If Yes, provide details.

5.  Within the past 3 years, have you been a principal owner or officer of any business or not-for-profit organization other than the one submitting the questionnaire? NO _x_ YES ___; If Yes, provide details.

LBBS (K-3) 000024

## APPENDIX D

6.  Has any governmental entity awarded any contracts to a business or organization listed in Section 5 in the past 3 years while you were a principal owner or officer? NO ___ YES x___ If Yes, provide details.    See attachment entitled "Awards within the past three years"

<u>NOTE:</u> An affirmative answer is required below whether the sanction arose automatically, by operation of law, or as a result of any action taken by a government agency.

Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.

7.  In the past (5) years, have you and/or any affiliated businesses or not-for-profit organizations listed in Section 5 in which you have been a principal owner or officer:

    a.  Been debarred by any government agency from entering into contracts with that agency? NO x___ YES ___ If Yes, provide details for each such instance.

    b.  Been declared in default and/or terminated for cause on any contract, and/or had any contract cancelled for cause? NO x___ YES ___ If Yes, provide details for each such instance.

    c.  Been denied the award of a contract and/or the opportunity to bid on a contract, including, but not limited to, failure to meet pre-qualification standards? NO x___ YES ___ If Yes, provide details for each such instance.

    d.  Been suspended by any government agency from entering into any contract with it; and/or is any action pending that could formally debar or otherwise affect such business's ability to bid or propose on contract? NO x___ YES ___ If Yes, provide details for each such instance.

8.  Have any of the businesses or organizations listed in response to Question 5 filed a bankruptcy petition and/or been the subject of involuntary bankruptcy proceedings during the past 7 years, and/or for any portion of the last 7 year period, been in a state of bankruptcy as a result of bankruptcy proceedings initiated more than 7 years ago and/or is any such business now the subject of any pending bankruptcy proceedings, whenever initiated? If 'Yes', provide details for each such instance. (Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.) No

    a)  Is there any felony charge pending against you? NO x___ YES ___ If Yes, provide details for each such charge.

    b)  Is there any misdemeanor charge pending against you? NO x___ YES ___ If Yes, provide details for each such charge.

    c)  Is there any administrative charge pending against you? NO x___ YES ___ If Yes, provide details for each such charge.

    d)  In the past 10 years, have you been convicted, after trial or by plea, of any felony, or of any other crime, an element of which relates to truthfulness or the underlying facts of which related

LBBS (K-3) 000026

**APPENDIX D**

to the conduct of business? NO _X_  YES ___   If Yes, provide details for each such conviction.

   e)  In the past 5 years, have you been convicted, after trial or by plea, of a misdemeanor? NO _X_ YES ___   If Yes, provide details for each such conviction.

   f)  In the past 5 years, have you been found in violation of any administrative or statutory charges? NO _X_ YES ___   If Yes, provide details for each such occurrence.

9.  In addition to the information provided in response to the previous questions, in the past 5 years, have you been the subject of a criminal investigation and/or a civil anti-trust investigation by any federal, state or local prosecuting or investigative agency and/or the subject of an investigation where such investigation was related to activities performed at, for, or on behalf of the submitting business entity and/or an affiliated business listed in response to Question 5? NO _X_ YES ___   If Yes, provide details for each such investigation.

10.  In addition to the information provided, in the past 5 years has any business or organization listed in response to Question 5, been the subject of a criminal investigation and/or a civil anti-trust investigation and/or any other type of investigation by any government agency, including but not limited to federal, state, and local regulatory agencies while you were a principal owner or officer? NO _X_ YES ___   If Yes; provide details for each such investigation.

11.  In the past 5 years, have you or this business, or any other affiliated business listed in response to Question 5 had any sanction imposed as a result of judicial or administrative proceedings with respect to any professional license held? NO _X_ YES ___   If Yes; provide details for each such instance.

12.  For the past 5 tax years, have you failed to file any required tax returns or failed to pay any applicable federal, state or local taxes or other assessed charges, including but not limited to water and sewer charges? NO _X_ YES ___   If Yes, provide details for each such year.

LBBS (K-3) 000028

## APPENDIX D

### CERTIFICATION

A MATERIALLY FALSE STATEMENT WILLFULLY OR FRAUDULENTLY MADE IN CONNECTION WITH THIS QUESTIONNAIRE MAY RESULT IN RENDERING THE SUBMITTING BUSINESS ENTITY NOT RESPONSIBLE WITH RESPECT TO THE PRESENT BID OR FUTURE BIDS, AND, IN ADDITION, MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL CHARGES.

I, Bruce Teal _____, being duly sworn, state that I have read and understand all the items contained in the foregoing pages of this questionnaire and the following pages of attachments; that I supplied full and complete answers to each item therein to the best of my knowledge, information and belief; that I will notify the County in writing of any change in circumstances occurring after the submission of this questionnaire and before the execution of the contract; and that all information supplied by me is true to the best of my knowledge, information and belief. I understand that the County will rely on the information supplied in this questionnaire as additional inducement to enter into a contract with the submitting business entity.

Sworn to before me this _6_ day of _October,_ 2009

_____
Notary Public

> Notary Public State of Florida
> N Capiro
> My Commission DD610155
> Expires 10/30/2010

Armor Correctional Health Services _____
Name of submitting business

Bruce Teal _____
Print name

_____
Signature

CEO _____
Title

_1_ 0 / 0  6 / 0  9
Date

LBBS (K-3) 000030

## AMENDMENT NO. 2

This Second Amendment and Extension to the Contract for Services between Nassau County (the "County"), a municipal corporation having its principal office at 1550 Franklin Avenue, Mineola, New York 11501, acting for and on behalf of the Nassau County Sheriff's Department (the "Department"), having its principal office at 100 Carman Avenue, East Meadow, New York 11554, and Armor Correctional Health Medical Services of New York, Inc., a Florida corporation having its principal corporate offices at 4960 S.W. 72 Avenue, Ste. 400, Miami, Florida 33155, and operating as a foreign professional corporation in New York State as Armor Correctional Health Medical Services of New York, Inc. P.C. (doing business as Armor Correctional Health Services of New York, Inc. ("Armor").

WHEREAS, the Parties executed a Health Services Agreement effective May 5, 2011 (the "Agreement"), by which Armor contracted to perform certain services for the County as the provider of medical, mental health, dental and ancillary services to inmates in the custody of the Department and/or incarcerated at the Nassau County Correctional Center ("Inmate Medical Services") to be delivered to detainees housed by the Sheriff;

WHEREAS, the County on behalf of its Department seeks to extend the Agreement to have Armor continue to provide the Inmate Medical Services as more fully described in the Agreement.

WHEREAS, the term of the Agreement was from June 1, 2011 through May 31, 2013, with an option to renew the term of the Agreement for up to two additional one (1) year periods under the same terms and conditions;

WHEREAS, in June 2013, the Parties entered into the First Amendment, which renewed the terms of the Agreement for an additional two (2) years, commencing June 1, 2013, so that the termination date of the Agreement as amended by the First Amendment was May 31, 2015.

LBBS (K-3) 000032

WHEREAS, pursuant to the Agreement, subsection (c) of Section 6. Payment, the parties agreed to renegotiate the reimbursable amounts and payment terms therein for the renewal period;

WHEREAS, pursuant to the Agreement, Armor provides services to Sheriff's Department Personnel as specified in subsection (1) of paragraph 3. Services therein;

WHEREAS, the County and Armor desire to extend the term of the Agreement and the compensation due to Armor thereunder;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed upon as follows:

1.      Term Renewal.  The Agreement shall be renewed for an additional two (2) years, commencing June 1, 2015, so that the termination date of the Agreement, as amended by this Second Amendment, shall be May 31, 2017 (the "Renewal Term").

2.      Payment.  (a) Amount of Consideration. (1).  The base compensation amount to be paid to Armor as full consideration for Armor's onsite services pursuant to the Agreement during the first year of the Renewal Term June 1, 2015 to May 31, 2016  shall be increased by 3.0%  or CPI Medical Care expenditure category for the Northeast region, whichever is lower, over the most recent base compensation.  For the second year of the Renewal Term, the amount of compensation due to Armor for onsite services shall be the previous contract year's base compensation amount adjusted by 3.0% or the CPI Medical Care expenditure category for the Northeast region, whichever is lower.

3.      To the extent that this Second Amendment modifies anything in the Agreement or the First Amendment, the terms contained herein shall supersede and replace those terms.

LBBS (K-3) 000034

4.    In all other respects, the terms and conditions of the Agreement, as amended and extended, shall continue unchanged and in full force and effect.

REMAINDER OF PAGE INTENTIONALL LEFT BLANK

LBBS (K-3) 000036

IN WITNESS WHEREOF, the Parties, by their authorized signatures below, have executed this Second Amendment and Extension to the Contract for Services.

**County of Nassau**

**By:**_____

**Name:**_____

**Title:**_____

**Date:**_____

**Armor Correctional Health Services of New York, Inc.**

By: _~~Karen Davies~~_

Name: _KAREN DAVIES_

Title: _President_

Date: _04/29/2015_

LBBS (K-3) 000038

STATE OF NEW YORK)
                 )ss.:
COUNTY OF NASSAU )


On the 28 day of April in the year 2015 before me personally came
Karen Davies to me personally known, who, being by me duly sworn, did depose
and say that he or she resides in the County of Martin ; that he or she is the
_____ of _____, the corporation described herein
and which executed the above instrument; and that he or she signed his or her name thereto by
authority of the board of directors of said corporation.


_____
NOTARY PUBLIC

```
LISA CEBOLLERO
Notary Public - State of Florida
My Comm. Expires May 30, 2018
Commission # FF 090631
```


STATE OF NEW YORK)
                 )ss.:
COUNTY OF NASSAU )


On the ____ day of _____ in the year 2015 before me personally came
_____ to me personally known, who, being by me duly sworn, did depose
and say that he or she resides in the County of _____; that he or she is a **Deputy
County Executive of the County of Nassau,** the municipal corporation described herein and
which executed the above instrument; and that he or she signed his or her name thereto pursuant
to Section 205 of the County Government Law of Nassau County.


_____
NOTARY PUBLIC

LBBS (K-3) 000040

## AMENDMENT NO. 1

AMENDMENT, dated as of _____, 2013 (together with the Original Agreement and any and all attachments thereto; and any and all appendices and attachments hereto, if any, this "Amendment"), between (i) Nassau County, a municipal corporation having its principal office at 1550 Franklin Avenue, Mineola, New York 11501 (the "County"), acting for and on behalf of the Nassau County Sheriff's Department, having its principal office at 100 Carman Avenue, East Meadow, New York 11554 (the "Department"), and (ii) Armor Correctional Health Services of New York, Inc., a Florida corporation having its principal corporate offices at 4960 S.W. 72nd Avenue, Suite 400, Miami, Florida 33155 (the "Contractor").

### WITNESSETH:

WHEREAS, pursuant to County contract number CQCC11000005 between the County and the Contractor, executed on behalf of the County on May 5, 2011 the "Original Agreement"), the Contractor performs certain services for the County as the provider of medical, mental health, dental and ancillary services to inmates in the custody of the Department and/or incarcerated at the Nassau County Correctional Center ("Inmate Medical Services");

WHEREAS, the County on behalf of its Department seeks to extend the Original Agreement to have the Contractor continue to provide the Inmate Medical Services as more fully described in the Original Agreement;

WHEREAS, the term of the Original Agreement is from June 1, 2011 through May 31, 2013, with an option to renew the term of the Original Agreement for up to two additional one (1) year periods under the same terms and conditions (the "Original Term");

WHEREAS, pursuant to the Original Agreement, subsection (c) of section 6. Payment, the parties agreed to renegotiate the reimbursable amounts and payment terms therein for the renewal period;

WHEREAS, pursuant to the Original Agreement, Contractor provides services to Sheriff's Department Personnel as specified in subsection (l) of paragraph 3. Services therein;

WHEREAS, pursuant to the Original Agreement, Contractor provided and agreed to a Staffing Matrix, Attachment G thereto, but after commencement of the Contract increased the Staffing at no cost to the County;

WHEREAS, the County and the Contractor desire to extend the Original Term, modify section 6 (c). Payment of the Original Agreement and revise the Staffing Matrix to reflect the increased staffing, and subsection (l) of paragraph 3. Services to add an additional service;

LBBS (K-3) 000042

NOW, THEREFORE, in consideration of the premises and mutual covenants contained in this Amendment, the parties agree as follows:

1. <u>Term Renewal</u>. The Original Agreement shall be renewed for an additional two (2) years, commencing June 1, 2013, so that the termination date of the Original Agreement, as amended by this Amendment (the "<u>Amended Agreement</u>"), shall be May 31, 2015.

2. <u>Payment.</u> (a) <u>Amount of Consideration</u>. (1). The base compensation amount to be paid to the Contractor as full consideration for the Contractor's services under this Amended Agreement for the first twelve (12) months shall be ███████████
████████████████████████████████████████████████████████ ███████ should County wish to have Armor process all offsite claims and the County pay them directly.

(2) In addition to the base compensation, the County shall pay Three and Sixty-four/one hundredth Dollars ($3.64) per diem for each inmate, who is in custody of the Department for more than four hours, in excess of 1650 average daily population.

(3) Offsite Services: Cost-sharing. The County and the Contractor shall share the cost of Offsite Services that exceed ███████████████████████████ The shared costs shall be calculated using the two-step process as set forth in subsection (i), (ii) and (iii) (a)(3) of paragraph 6. of the Original Agreement, except to the extent that the County shall be responsible to pay the first ██████████████████████ in offsite services costs as set forth herein in this Amendment.

(b) <u>Amount of Consideration: Second Year</u>. For the second year of the Amended Agreement, the base compensation amount for onsite services ████████ shall be adjusted by ███ or the CPI Medical Care expenditure category for the Northeast region, whichever is lower; unless the average daily number of inmates (ADP) in the custody of the Nassau County Sheriff's Department increases to 1600 or more, in which case the base compensation amount for onsite services shall be adjusted by ██% or the CPI Medical Care expenditure category for the Northeast region, whichever is lower.

3. <u>Services</u>. (l) <u>Provision of Services to Sheriff's Department Personnel</u>. In addition to the services provided for in subdivisions (1) and (2) of subsection (l) of the Original Agreement, Contractor agrees to provide any and all other vaccines to Sheriff's Department personnel, as requested by the County. County shall provide supplies and vaccines to Contractor, and Contractor shall maintain adequate records concerning any such request for and administering of additional vaccines.

LBBS (K-3) 000044

    4.    <u>Staffing</u>.  Contractor shall provide staffing as reflected in Attachment AA, attached hereto, to the Amended Agreement to provide the Services required in the Original Agreement and as amended in the Amended Agreement.

    5.    <u>Full Force and Effect</u>.  All the terms and conditions of the Original Agreement not expressly amended by this Amendment shall remain in full force and effect and govern the relationship of the parties for the Extension Term of the Amended Agreement.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

\

LBBS (K-3) 000046

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first above written.

ARMOR CORRECTIONAL HEALTH SERVICES
OF NEW YORK, INC.

By: _____

Name: _____

Title: _CCO_____

Date: _6/10/2013_____


COUNTY OF NASSAU

By: _____

Name: _Richard R. Walker_____
        Chief Deputy County Executive

Title: _Chief Deputy County Executive_____

Date: _8/1/13_____


PLEASE EXECUTE IN <u>BLUE</u> INK

LBBS (K-3) 000047

LBBS (K-3) 000048

STATE OF NEW YORK)
                 )ss.:
COUNTY OF NASSAU )

On the 10 day of June _____ in the year 2011 ~~2013~~ before me personally came Richard R. Walker to me personally known, who, being by me duly sworn, did depose and say that he or she resides in the County of _____ ; that he ~~or she~~ is the CEO _____ of Aramark CHFSNY _____ , the corporation described herein and which executed the above instrument; and that he or she signed his or her name thereto by authority of the board of directors of said corporation.

_____
NOTARY PUBLIC

L. SARDINAS
MY COMMISSION # DD 927010
EXPIRES: January 11, 2014
Bonded Thru Notary Public Underwriters

STATE OF NEW YORK)
                 )ss.:
COUNTY OF NASSAU )

On the 1 day of August _____ in the year 2011 ~~2013~~ before me personally came Richard R. Walker _____ to me personally known, who, being by me duly sworn, did depose and say that he or she resides in the County of Nassau _____ ; that he or she is a **Chief Deputy County Executive of the County of Nassau**, the municipal corporation described herein and which executed the above instrument; and that he or she signed his or her name thereto pursuant to Section 205 of the County Government Law of Nassau County.

_____

DOREEN R. PENNICA
NOTARY PUBLIC
STATE OF NEW YORK
COMMISSION NO. 01PE6170832
EXPIRES 7/23/2015

LBBS (K-3) 000050

Case 2:17-cv-05623-LGD   Document 147-1   Filed 04/03/25   Page 51 of 156 PageID #: 4574

```
FAML6455 V4.2              NIFS PRODUCTION SYSTEM              04/28/2015
LINK TO:               CURRENT YR BUDGET & OBLIGATION SUMMARY     1:30 PM
ACTIVE
BALANCE (Y,M,Q,A) : Y
FISCAL MO/YEAR    : 04 2015 APR   2015
INDEX             : CCGEN1320       MEDICAL SERVICES UNIT
ORGANIZATION      :
CHARAC / OBJECT   : E20   DE        CONTRACTUAL SERVICES
FDTP FUND SFND    :
PROJECT PROJ DTL  :
GRANT   GRANT DTL :
UCODE/ORD#/DRC    :
_____
S SUBOBJ DESCRIPTION    ORIG BUDGT    CUR BUDGET    CUR OBLIG    CUR BALANCE
  DE524 MEDICAL/PS
        EXP TOTAL       ███████████████████████████████████████████████



  F1-HELP     F2-SELECT                  F4-PRIOR      F5-NEXT
  F7-PRIOR PG F8-NEXT PG   F9-LINK
  G014 - RECORD FOUND
```

LBBS (K-3) 000051

LBBS (K-3) 000052

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 11/20/2014 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. IF SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| MCGRIFF, SEIBELS & WILLIAMS, INC. P.O. Box 10286 Birmingham, AL 35202 | PHONE (A/C, No, Ext): 800-476-2211 | FAX (A/C, No): | |
| | E-MAIL ADDRESS: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| | INSURER A : Evanston Insurance Company | | 35378 |
| INSURED Armor Correctional Health Services Inc. 4880 SW 72nd Ave Suite 400 Miami, FL 33155 | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER: XMNUMBZ4          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | SM004163 | 12/01/2014 | 12/01/2015 | EACH OCCURRENCE | $ 1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | X CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ WC STATU- TORY LIMITS ☐ OTH- ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liability | | | SM004163 | 12/01/2014 | 12/01/2015 | Each Medical Incident Limit Aggregate Limit | $ 1,000,000 $ 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate holder is named as additional insured with respect to general and professional liability as required by written contract but only with respect to medical professional services performed by the named insured or an additional named insured at a scheduled location. Subject to policy terms, conditions, and exclusions.

Contract Start Date: 6/1/11

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Nassau County Correctional Facility 100 Carmen Ave East Meadow, NY 11554 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *[signature]* |

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

LBBS (K-3) 000053

LBBS (K-3) 000054

 ACORD®

# CERTIFICATE OF LIABILITY INSURANCE Page 1 of 1

| DATE (MM/DD/YYYY) |
|---|
| 11/25/2014 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Willis of Texas, Inc. c/o 26 Century Blvd. P.O. Box 305191 Nashville, TN 37230-5191 | PHONE (A/C, No, Ext): 877-945-7378 | | FAX (A/C, No): 888-467-2378 |
| | E-MAIL ADDRESS: certificates@willis.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A: National Union Fire Ins Co of Pittsburgh | | 19445-002 |
| INSURED | INSURER B: New Hampshire Insurance Company | | 23841-001 |
| Armor Correctional Health Services of New York, Inc 4960 SW 72nd Avenue Miami, FL 33155 | INSURER C: Commerce & Industry Insurance Company | | 19410-000 |
| | INSURER D: Travelers Casualty & Surety Company of Am | | 31194-000 |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES          CERTIFICATE NUMBER: 22377960          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | CA0934865 | 12/1/2014 | 12/1/2015 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☒ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| B C | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | WC038238280 WC015684216 | 12/1/2014 12/1/2014 | 12/1/2015 12/1/2015 | ☒ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| D | Crime | | | 105753125 | 3/1/2014 | 3/1/2015 | $1,000,000 Limit | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Nassau County Sheriff's Office 100 Carman Avenue East Meadow, NY 11554 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE Wallace J. |

Coll:4571370 Tpl:1890182 Cert:22377960 ©1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD

LBBS (K-3) 000056

# ACORD® CERTIFICATE OF LIABILITY INSURANCE Page 1 of 1

| | DATE (MM/DD/YYYY) |
|---|---|
| | 11/25/2014 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| Willis of Texas, Inc.<br>c/o 26 Century Blvd.<br>P.O. Box 305191<br>Nashville, TN 37230-5191 | | PHONE (A/C, NO, EXT): 877-945-7378 | | FAX (A/C, NO): 888-467-2378 |
| | | E-MAIL ADDRESS: certificates@willis.com | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | INSURER A: National Union Fire Ins Co of Pittsburgh | | 19445-002 |
| INSURED | | INSURER B: New Hampshire Insurance Company | | 23841-001 |
| Armor Correctional Health Services of New York, Inc<br>4960 SW 72nd Avenue<br>Miami, FL 33155 | | INSURER C: Commerce & Industry Insurance Company | | 19410-000 |
| | | INSURER D: Travelers Casualty & Surety Company of Am | | 31194-000 |
| | | INSURER E: | | |
| | | INSURER F: | | |

## COVERAGES          CERTIFICATE NUMBER: 22377959          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | CA0934865 | 12/1/2014 | 12/1/2015 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☒ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| B<br>C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ N<br>(Mandatory in NH)<br>If yes, describe under<br>DESCRIPTION OF OPERATIONS below | | N/A | WC038238280<br>WC015684216 | 12/1/2014<br>12/1/2015 | 12/1/2015<br>12/1/2015 | ☒ PER STATUTE ☐ OTHER<br>E.L. EACH ACCIDENT<br>E.L. DISEASE - EA EMPLOYEE<br>E.L. DISEASE - POLICY LIMIT | <br>$ 1,000,000<br>$ 1,000,000<br>$ 1,000,000 |
| D | Crime | | | 105753125 | 3/1/2014 | 3/1/2015 | $1,000,000 Limit | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Nassau County Correctional Center<br>100 Carman Avenue<br>East Meadow, NY 11554 | AUTHORIZED REPRESENTATIVE<br>*JB Wallace Jr.* |

Coll:4571370 Tpl:1890182 Cert:22377959  © 1988–2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD

LBBS (K-3) 000058

## APPENDIX C

### Business History Form

The contract(s) shall be awarded to the responsible proposer(s) who, at the discretion of the County, taking into consideration the reliability of the proposer and the capacity of the proposer to perform the services required by the County, offers the best value to the County and who will best promote the public interest.

In addition to the submission of proposals, each proposer shall complete and submit this questionnaire. The questionnaire shall be filled out by the owner of a sole proprietorship or by an authorized representative of the firm, corporation or partnership submitting the Proposal.

(USE ADDITIONAL SHEETS IF NECESSARY TO FULLY ANSWER THE FOLLOWING QUESTIONS).

Date: October 9, 2009

1) Proposer's Legal Name: Armor Correctional Health Services, Inc.

2) Address of Place of Business: 4960 SW 72nd Avenue, Miami, FL 33155

List all other business addresses used within last five years:
1475 Lyons Rd, Coconut Creek, FL 33063

3) Mailing Address (if different): same

Phone : ▮▮▮▮▮▮▮▮

Does the business own or rent its facilities? Rent

4) Dun and Bradstreet number: 171079028

5) The proposer is a (check one): _____ Sole Proprietorship _____ Partnership _____ Corporation X_
   Other (Describe) _____

6) Does this business share office space, staff, or equipment expenses with any other business?
   Yes ___ No X_ If Yes, please provide details: _____

7) Does this business control one or more other businesses? Yes ___ No X_ If Yes, please provide details: _____

LBBS (K-3) 000060

## APPENDIX C

8) Does this business have one or more affiliates, and/or is it a subsidiary of, or controlled by, any other business? Yes ____ No _X_ If Yes, provide details. _____
_____

9) Has the proposer ever had a bond or surety cancelled or forfeited, or a contract with Nassau County or any other government entity terminated? Yes ____ No _X_ If Yes, state the name of bonding agency, (if a bond), date, amount of bond and reason for such cancellation or forfeiture: or details regarding the termination (if a contract). _____
_____

10) Has the proposer, during the past seven years, been declared bankrupt? Yes ____ No _X_ If Yes, state date, court jurisdiction, amount of liabilities and amount of assets _____
_____

11) In the past five years, has this business and/or any of its owners and/or officers and/or any affiliated business, been the subject of a criminal investigation and/or a  civil anti-trust investigation by any federal, state or local prosecuting or investigative agency? And/or, in the past 5 years, have any owner and/or officer of any affiliated business been the subject of a criminal investigation and/or a civil anti-trust investigation by any federal, state or local prosecuting or investigative agency, where such investigation was related to activities performed at, for, or on behalf of an affiliated business.
Yes ____ No _X_ If Yes, provide details for each such investigation. _____
_____
_____

12) In the past 5 years, has this business and/or any of its owners and/or officers and/or any affiliated business been the subject of an investigation by any government agency, including but not limited to federal, state and local regulatory agencies? And/or, in the past 5 years, has any owner and/or officer of an affiliated business been the subject of an investigation by any government agency, including but not limited to federal, state and local regulatory agencies, for matters pertaining to that individual's position at or relationship to an affiliated business. Yes ____ No _X_ If Yes, provide details for each such investigation. _____
_____

13) Has any current or former director, owner or officer or managerial employee of this business had, either before or during such person's employment, or since such employment if the charges pertained to events that allegedly occurred during the time of employment by the submitting business, and allegedly related to the conduct of that business:

         a) Any felony charge pending? No _X_ Yes ____ If Yes, provide details for each such charge. _____
         _____

         b) Any misdemeanor charge pending? No _X_ Yes ____ If Yes, provide details for each such charge. _____
         _____

LBBS (K-3) 000062

**APPENDIX C**

c) In the past 10 years, you been convicted, after trial or by plea, of any felony and/or any other crime, an element of which relates to truthfulness or the underlying facts of which related to the conduct of business? No _X_ Yes ___ If Yes, provide details for each such conviction _____

d) In the past 5 years, been convicted, after trial or by plea, of a misdemeanor? No _X_ Yes ___ If Yes, provide details for each such conviction. _____

e) In the past 5 years, been found in violation of any administrative, statutory, or regulatory provisions? No _X_ Yes ___ If Yes, provide details for each such occurrence. _____

14) In the past (5) years, has this business or any of its owners or officers, or any other affiliated business had any sanction imposed as a result of judicial or administrative proceedings with respect to any professional license held? No _X_ Yes ___; If Yes, provide details for each such instance. _____

15) For the past (5) tax years, has this business failed to file any required tax returns or failed to pay any applicable federal, state or local taxes or other assessed charges, including but not limited to water and sewer charges? No X _ Yes ___ If Yes, provide details for each such year. Provide a detailed response to all questions checked 'YES'. If you need more space, photocopy the appropriate page and attach it to the questionnaire. _____

Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.

16) Conflict of Interest:

a)    Please disclose:

(i) Any material financial relationships that your firm or any firm employee has that may create a conflict of interest or the appearance of a conflict of interest in acting as a contractor for Nassau County.    None

(ii) Any family relationship that any employee of your firm has with any County public servant that may create a conflict of interest or the appearance of a conflict of interest in acting as a contractor for Nassau County.    None

(iii) Any other matter that your firm believes may create a conflict of interest or the appearance of a conflict of interest in acting as a contractor for Nassau County.    None

b)    Please describe any procedures your firm has, or would adopt, to assure the County that a conflict of interest would not exist for your firm in the future. We have standards of ethical conduct. We provide regular training/reminders to prevent conflicts of interest between company and clients.

LBBS (K-3) 000064

**APPENDIX C**

**Attachments To Business History Form**

Please provide any other information which would be appropriate and helpful in determining the Proposer's capacity and reliability to perform these services.

A.  Include a resume or detailed description of the Proposer's professional qualifications, demonstrating extensive experience in your profession. Any prior similar experiences, and the results of these experiences, must be identified.

Should the proposer be other than an individual, the Proposal should include:

   i)    Date of formation;  July 19, 2004

   ii)   Name, addresses, and position of all persons having a financial interest in the company, including any shareholders owning 10% or more of the firm's outstanding shares), members, general or limited partner;  Jose Armas, President. 4960 SW 72nd Ave, Suite 400, Miami, FL 33155

   iii)  Name, address and position of all officers and directors of the company;  Jose Armas, President
                                                                                   4960 SW 72nd Ave, Suite 400, Miami, FL 33155

   iv)   State of incorporation (if applicable);  Florida

   v)    The number of employees in the firm;  1530

   vi)   Annual revenue of firm;  ███████

   vii)  Summary of relevant accomplishments  NCCHC facility of the year 2008, and program of the year 2006 (attachment)

   viii) Copies of all relevant state and local licenses and permits.  see attachment

B.  Provide any other information which would be appropriate and helpful in determining the Proposer's capacity and reliability to perform these services.  see attachment

C.  Provide names and addresses for no fewer than three references for whom the Proposer has provided similar services or who are qualified to evaluate the Proposer's capability to perform this work.

Company ___Broward County Sheriffs Office___

Contact Person___Sheriff Al Lamberti___

Address _2601 West Broward Blvd_

City/State ___Fort Lauderedale, Florida      33312___

Telephone ___████████___

Fax # _NA_

E-Mail Address ___██████████.org___

LBBS (K-3) 000066

# APPENDIX C

Company    Virgina Department of Corrections

Contact Person Fred Schilling

Address 6900 Atmore Drive

City/State  Richmond, Virgina  23225

Telephone ███████████

Fax # NA

E-Mail Address ███████████ gov

Company ____ Olkahoma County Sheriffs Office

Contact Person    Major Jack Herron

Address  201 North Shartel Avuenue

City/State Oklahoma City, OK  73102

Telephone ███████

Fax # ████████

E-Mail Address ███████ org

LBBS (K-3) 000068

**APPENDIX C**

**CERTIFICATION**

A MATERIALLY FALSE STATEMENT WILLFULLY OR FRAUDULENTLY MADE IN CONNECTION WITH THIS QUESTIONNAIRE MAY RESULT IN RENDERING THE SUBMITTING BUSINESS ENTITY NOT RESPONSIBLE WITH RESPECT TO THE PRESENT BID OR FUTURE BIDS, AND, IN ADDITION, MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL CHARGES.

I, Jose Armas _____, being duly sworn, state that I have read and understand all the items contained in the foregoing pages of this questionnaire and the following pages of attachments; that I supplied full and complete answers to each item therein to the best of my knowledge, information and belief; that I will notify the County in writing of any change in circumstances occurring after the submission of this questionnaire and before the execution of the contract; and that all information supplied by me is true to the best of my knowledge, information and belief. I understand that the County will rely on the information supplied in this questionnaire as additional inducement to enter into a contract with the submitting business entity.

Sworn to before me this 9th day of October, 2009          :2009

_____
Notary Public

Name of submitting business: Armor Correctional Health Services, Inc.

By: Jose Armas
Print name

_____
Signature

President
Title

10 / 9 / 2009
Date

LISSETTE SARDINAS
MY COMMISSION # CD 470857
EXPIRES: January 11, 2010
Bonded Thru Budget Notary Services

LBBS (K-3) 000070

**APPENDIX C**

**Business History Form**

The contract(s) shall be awarded to the responsible proposer(s) who, at the discretion of the County, taking into consideration the reliability of the proposer and the capacity of the proposer to perform the services required by the County, offers the best value to the County and who will best promote the public interest.

In addition to the submission of proposals, each proposer shall complete and submit this questionnaire. The questionnaire shall be filled out by the owner of a sole proprietorship or by an authorized representative of the firm, corporation or partnership submitting the Proposal.

(USE ADDITIONAL SHEETS IF NECESSARY TO FULLY ANSWER THE FOLLOWING QUESTIONS).

Date: October 9, 2009

1) Proposer's Legal Name: Armor Correctional Health Services, Inc.

2) Address of Place of Business: 4960 SW 72nd Avenue, Miami, FL 33155

List all other business addresses used within last five years:
1475 Lyons Rd, Coconut Creek, FL 33063

3) Mailing Address (if different): same

Phone ████████████

Does the business own or rent its facilities? Rent

4) Dun and Bradstreet number: ████████

5) The proposer is a (check one): ____ Sole Proprietorship ____ Partnership ____ Corporation X Other (Describe) _____

6) Does this business share office space, staff, or equipment expenses with any other business? Yes ___ No X If Yes, please provide details: _____

7) Does this business control one or more other businesses? Yes ___ No X If Yes, please provide details: _____

LBBS (K-3) 000072

**APPENDIX C**

8) Does this business have one or more affiliates, and/or is it a subsidiary of, or controlled by, any other business? Yes ___ No _X_    If Yes, provide details._____
_____

9) Has the proposer ever had a bond or surety cancelled or forfeited, or a contract with Nassau County or any other government entity terminated? Yes ___ No _X_    If Yes, state the name of bonding agency, (if a bond), date, amount of bond and reason for such cancellation or forfeiture: or details regarding the termination (if a contract). _____
_____

10) Has the proposer, during the past seven years, been declared bankrupt? Yes ___ No _X_    If Yes, state date, court jurisdiction, amount of liabilities and amount of assets _____
_____

11) In the past five years, has this business and/or any of its owners and/or officers and/or any affiliated business, been the subject of a criminal investigation and/or a  civil anti-trust investigation by any federal, state or local prosecuting or investigative agency? And/or, in the past 5 years, have any owner and/or officer of any affiliated business been the subject of a criminal investigation and/or a civil anti-trust investigation by any federal, state or local prosecuting or investigative agency, where such investigation was related to activities performed at, for, or on behalf of an affiliated business. Yes ___ No _X_    If Yes, provide details for each such investigation. _____
_____

12) In the past 5 years, has this business and/or any of its owners and/or officers and/or any affiliated business been the subject of an investigation by any government agency, including but not limited to federal, state and local regulatory agencies? And/or, in the past 5 years, has any owner and/or officer of an affiliated business been the subject of an investigation by any government agency, including but not limited to federal, state and local regulatory agencies, for matters pertaining to that individual's position at or relationship to an affiliated business. Yes ___ No _X_    If Yes, provide details for each such investigation. _____
_____

13) Has any current or former director, owner or officer or managerial employee of this business had, either before or during such person's employment, or since such employment if the charges pertained to events that allegedly occurred during the time of employment by the submitting business, and allegedly related to the conduct of that business:

      a)  Any felony charge pending? No _X_ Yes ___    If Yes, provide details for each such charge._____
_____

      b)  Any misdemeanor charge pending? No _X_ Yes ___    If Yes, provide details for each such charge._____
_____

LBBS (K-3) 000074

**APPENDIX C**

c) In the past 10 years, you been convicted, after trial or by plea, of any felony and/or any other crime, an element of which relates to truthfulness or the underlying facts of which related to the conduct of business? No _X_ Yes ___  If Yes, provide details for each such conviction _____

d) In the past 5 years, been convicted, after trial or by plea, of a misdemeanor? No _X_ Yes ___  If Yes, provide details for each such conviction. _____

e) In the past 5 years, been found in violation of any administrative, statutory, or regulatory provisions? No _X_ Yes ___  If Yes, provide details for each such occurrence. _____

14) In the past (5) years, has this business or any of its owners or officers, or any other affiliated business had any sanction imposed as a result of judicial or administrative proceedings with respect to any professional license held? No _X_ Yes ___ ;  If Yes, provide details for each such instance. _____

15) For the past (5) tax years, has this business failed to file any required tax returns or failed to pay any applicable federal, state or local taxes or other assessed charges, including but not limited to water and sewer charges? No X _ Yes ___  If Yes, provide details for each such year. Provide a detailed response to all questions checked 'YES'. If you need more space, photocopy the appropriate page and attach it to the questionnaire. _____

Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.

16) Conflict of Interest:

a) Please disclose:

(i) Any material financial relationships that your firm or any firm employee has that may create a conflict of interest or the appearance of a conflict of interest in acting as a contractor for Nassau County.  None

(ii) Any family relationship that any employee of your firm has with any County public servant that may create a conflict of interest or the appearance of a conflict of interest in acting as a contractor for Nassau County.  None

(iii) Any other matter that your firm believes may create a conflict of interest or the appearance of a conflict of interest in acting as a contractor for Nassau County.  None

b) Please describe any procedures your firm has, or would adopt, to assure the County that a conflict of interest would not exist for your firm in the future. We have standards of ethical conduct. We provide regular training/reminders to prevent conflicts of interest between company and clients.

LBBS (K-3) 000076

**APPENDIX C**

Attachments To Business History Form

Please provide any other information which would be appropriate and helpful in determining the Proposer's capacity and reliability to perform these services.

A.  Include a resume or detailed description of the Proposer's professional qualifications, demonstrating extensive experience in your profession. Any prior similar experiences, and the results of these experiences, must be identified.

   Should the proposer be other than an individual, the Proposal should include:

   i)    Date of formation;  July 19, 2004

   ii)   Name, addresses, and position of all persons having a financial interest in the company, including any shareholders owning 10% or more of the firm's outstanding shares), members, general or limited partner;  Jose Armas, President. 4960 SW 72nd Ave, Suite 400, Miami, FL 33155

   iii)  Name, address and position of all officers and directors of the company;  Jose Armas, President
         4960 SW 72nd Ave, Suite 400, Miami, FL 33155

   iv)   State of incorporation (if applicable);  Florida

   v)    The number of employees in the firm;  1530

   vi)   Annual revenue of firm;  $95,000,000

   vii)  Summary of relevant accomplishments  NCCHC facility of the year 2008, and program of the year 2006 (attachment)

   viii) Copies of all relevant state and local licenses and permits.  see attachment

B.  Provide any other information which would be appropriate and helpful in determining the Proposer's capacity and reliability to perform these services.  see attachment

C.  Provide names and addresses for no fewer than three references for whom the Proposer has provided similar services or who are qualified to evaluate the Proposer's capability to perform this work.

Company ___ Broward County Sheriffs Office ___

Contact Person___ Sheriff Al Lamberti ___

Address 2601 West Broward Blvd ___

City/State ___ Fort Lauderedale, Florida   33312 ___

Telephone ███████ ___

Fax # NA ___

E-Mail Address ███████ org ___

LBBS (K-3) 000078

## APPENDIX C

Company ___Virgina Department of Corrections___

Contact Person Fred Schilling

Address 6900 Atmore Drive

City/State  Richmond, Virgina  23225

Telephone ▮

Fax # NA

E-Mail Address ▮gov

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Company ___Olkahoma County Sheriffs Office___

Contact Person  Major Jack Herron

Address 201 North Shartel Avuenue

City/State Oklahoma City, OK  73102

Telephone ▮

Fax # ▮

E-Mail Address ▮.org

LBBS (K-3) 000080

## APPENDIX C

## CERTIFICATION

A MATERIALLY FALSE STATEMENT WILLFULLY OR FRAUDULENTLY MADE IN CONNECTION WITH THIS QUESTIONNAIRE MAY RESULT IN RENDERING THE SUBMITTING BUSINESS ENTITY NOT RESPONSIBLE WITH RESPECT TO THE PRESENT BID OR FUTURE BIDS, AND, IN ADDITION, MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL CHARGES.

I, Bruce Teal _____, being duly sworn, state that I have read and understand all the items contained in the foregoing pages of this questionnaire and the following pages of attachments; that I supplied full and complete answers to each item therein to the best of my knowledge, information and belief; that I will notify the County in writing of any change in circumstances occurring after the submission of this questionnaire and before the execution of the contract; and that all information supplied by me is true to the best of my knowledge, information and belief. I understand that the County will rely on the information supplied in this questionnaire as additional inducement to enter into a contract with the submitting business entity.

Sworn to before me this ___6___ day of ___October___      ___2009

_____
Notary Public

Notary Public State of Florida
N Capiro
My Commission DD610155
Expires 10/30/2010

Name of submitting business: Armor Correctional Health Services, Inc. _____

By: Bruce Teal
_____
Print name

_____
Signature

CEO _____
Title

10 / 6 / 2009
Date

LBBS (K-3) 000082

# Principal Questionaire



**Armor**
Correctional Health Services, Inc.

## Armor Correctional Health Services

## Proposal

## Inmate Medical Services

## October 13, 2009

LBBS (K-3) 000083

LBBS (K-3) 000084

## APPENDIX D

## PRINCIPAL QUESTIONNAIRE FORM

Any individual who holds ten percent or greater ownership interest in the proposer or who is an officer of the proposer shall complete and certify a Principal Questionnaire Form. All questions on the questionnaire must be answered and the answers typewritten or printed in ink. If you need more space to answer any question, make as many photocopies of the appropriate page(s) as necessary and attach them to the questionnaire.

COMPLETE THIS QUESTIONNAIRE CAREFULLY AND COMPLETELY. FAILURE TO SUBMIT A COMPLETE QUESTIONNAIRE MAY MEAN THAT YOUR BID OR PROPOSAL WILL BE REJECTED AS NON-RESPONSIVE AND IT WILL NOT BE CONSIDERED FOR AWARD

1. Principal Name  Jose Armas

    Business address  4960 SW 72nd Ave, Suite 400

    City/state/zip  Miami/Florida/33155

    Telephone  ▮▮▮▮▮▮▮

    Other present address(es) _____

    City/state/zip _____

    Telephone _____

    List of other addresses and telephone numbers attached

2. Positions held in submitting business and starting date of each (check all applicable)

    President  0 7/1 9/0 4  Treasurer ___/___/___

    Chairman of Board ___/___/___  Shareholder ___/___/___

    Chief Exec. Officer ___/___/___  Secretary ___/___/___

    Chief Financial Officer ___/___/___  Partner ___/___/___

    Vice President ___/___/___ _____ ___/___/___

    (Other)

3. Do you have an equity interest in the business submitting the questionnaire?
    NO ___ YES _x_   If Yes, provide details.  Dr. Armas is the 100% shareholder of Armor.

4. Are there any outstanding loans, guarantees or any other form of security or lease or any other type of contribution made in whole or in part between you and the business submitting the questionnaire?
    NO ___ YES _x_   If Yes, provide details.  Armor leases its office space in a building owned by Dr. Armas.

5. Within the past 3 years, have you been a principal owner or officer of any business or not-for-profit organization other than the one submitting the questionnaire? NO ___ YES _x_ ; If Yes, provide details.

LBBS (K-3) 000086

**APPENDIX D**

6. Has any governmental entity awarded any contracts to a business or organization listed in Section 5 in the past 3 years while you were a principal owner or officer? NO ___ YES x ___ If Yes, provide details.    See attachment entitled "Awards within the past three years"

<u>NOTE:</u> An affirmative answer is required below whether the sanction arose automatically, by operation of law, or as a result of any action taken by a government agency.
Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.

7. In the past (5) years, have you and/or any affiliated businesses or not-for-profit organizations listed in Section 5 in which you have been a principal owner or officer:

   a. Been debarred by any government agency from entering into contracts with that agency? NO X YES ____ If Yes, provide details for each such instance.

   b. Been declared in default and/or terminated for cause on any contract, and/or had any contract cancelled for cause? NO X YES ___ If Yes, provide details for each such instance.

   c. Been denied the award of a contract and/or the opportunity to bid on a contract, including, but not limited to, failure to meet pre-qualification standards? NO X YES ___ If Yes, provide details for each such instance.

   d. Been suspended by any government agency from entering into any contract with it; and/or is any action pending that could formally debar or otherwise affect such business's ability to bid or propose on contract? NO X YES ___ If Yes, provide details for each such instance.

8. Have any of the businesses or organizations listed in response to Question 5 filed a bankruptcy petition and/or been the subject of involuntary bankruptcy proceedings during the past 7 years, and/or for any portion of the last 7 year period, been in a state of bankruptcy as a result of bankruptcy proceedings initiated more than 7 years ago and/or is any such business now the subject of any pending bankruptcy proceedings, whenever initiated? If 'Yes', provide details for each such instance. (Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.) No

   a) Is there any felony charge pending against you? NO X YES ___ If Yes, provide details for each such charge.

   b) Is there any misdemeanor charge pending against you? NO X YES ___ If Yes, provide details for each such charge.

   c) Is there any administrative charge pending against you? NO X YES ___ If Yes, provide details for each such charge.

   d) In the past 10 years, have you been convicted, after trial or by plea, of any felony, or of any other crime, an element of which relates to truthfulness or the underlying facts of which related

LBBS (K-3) 000088

## APPENDIX D

to the conduct of business? NO  X  YES ___    If Yes, provide details for each such conviction.

e) In the past 5 years, have you been convicted, after trial or by plea, of a misdemeanor? NO  X  YES ___    If Yes, provide details for each such conviction.

f) In the past 5 years, have you been found in violation of any administrative or statutory charges? NO  X  YES ___    If Yes, provide details for each such occurrence.

9. In addition to the information provided in response to the previous questions, in the past 5 years, have you been the subject of a criminal investigation and/or a civil anti-trust investigation by any federal, state or local prosecuting or investigative agency and/or the subject of an investigation where such investigation was related to activities performed at, for, or on behalf of the submitting business entity and/or an affiliated business listed in response to Question 5? NO  X  YES ___    If Yes, provide details for each such investigation.

10. In addition to the information provided, in the past 5 years has any business or organization listed in response to Question 5, been the subject of a criminal investigation and/or a civil anti-trust investigation and/or any other type of investigation by any government agency, including but not limited to federal, state, and local regulatory agencies while you were a principal owner or officer? NO  X  YES ___    If Yes; provide details for each such investigation.

11. In the past 5 years, have you or this business, or any other affiliated business listed in response to Question 5 had any sanction imposed as a result of judicial or administrative proceedings with respect to any professional license held? NO  X  YES ___    If Yes; provide details for each such instance.

12. For the past 5 tax years, have you failed to file any required tax returns or failed to pay any applicable federal, state or local taxes or other assessed charges, including but not limited to water and sewer charges? NO  X  YES ___    If Yes, provide details for each such year.

LBBS (K-3) 000090

**APPENDIX D**

**CERTIFICATION**

A MATERIALLY FALSE STATEMENT WILLFULLY OR FRAUDULENTLY MADE IN
CONNECTION WITH THIS QUESTIONNAIRE MAY RESULT IN RENDERING THE
SUBMITTING BUSINESS ENTITY NOT RESPONSIBLE WITH RESPECT TO THE PRESENT BID
OR FUTURE BIDS, AND, IN ADDITION, MAY SUBJECT THE PERSON MAKING THE FALSE
STATEMENT TO CRIMINAL CHARGES.

I, Jose Armas _____, being duly sworn, state that I have read and understand all the items
contained in the foregoing pages of this questionnaire and the following pages of attachments; that I
supplied full and complete answers to each item therein to the best of my knowledge, information and
belief; that I will notify the County in writing of any change in circumstances occurring after the
submission of this questionnaire and before the execution of the contract; and that all information
supplied by me is true to the best of my knowledge, information and belief. I understand that the County
will rely on the information supplied in this questionnaire as additional inducement to enter into a contract
with the submitting business entity.

Sworn to before me this 9th day of   October   ,   2009

_____
Notary Public

Armor Correctional Health Services
_____
Name of submitting business

Jose Armas
_____
Print name

_____
Signature

President
_____
Title

  1  0/ 0  6/ 0  9
_____
Date



LISSETTE SARDINAS
MY COMMISSION # DD 470857
EXPIRES: January 11, 2010
Bonded Thru Budget Notary Services

LBBS (K-3) 000092

## APPENDIX D

### PRINCIPAL QUESTIONNAIRE FORM

Any individual who holds ten percent or greater ownership interest in the proposer or who is an officer of the proposer shall complete and certify a Principal Questionnaire Form. All questions on the questionnaire must be answered and the answers typewritten or printed in ink. If you need more space to answer any question, make as many photocopies of the appropriate page(s) as necessary and attach them to the questionnaire.

<u>COMPLETE THIS QUESTIONNAIRE CAREFULLY AND COMPLETELY. FAILURE TO SUBMIT A COMPLETE QUESTIONNAIRE MAY MEAN THAT YOUR BID OR PROPOSAL WILL BE REJECTED AS NON-RESPONSIVE AND IT WILL NOT BE CONSIDERED FOR AWARD</u>

1.   Principal Name _Bruce Teal_____

    Business address _4960 SW 72nd Ave, Suite 400_____

    City/state/zip _Miami/Florida/33155_____

    Telephone ▮▮▮▮▮▮▮▮_____

    Other present address(es) _____

    City/state/zip _____

    Telephone _____

    List of other addresses and telephone numbers attached

2.   Positions held in submitting business and starting date of each (check all applicable)

    President ____/____/____ Treasurer ____/____/____

    Chairman of Board ____/____/____ Shareholder ____/____/____

    Chief Exec. Officer _0_9/0_1/0_6_ Secretary ____/____/____

    Chief Financial Officer _0_3/0_1/0_6_ Partner ____/____/____

    Vice President ____/____/____ _____ ____/____/____

    (Other)

3.   Do you have an equity interest in the business submitting the questionnaire?
    NO _x_ YES ___ If Yes, provide details.

4.   Are there any outstanding loans, guarantees or any other form of security or lease or any other type of contribution made in whole or in part between you and the business submitting the questionnaire?
    NO _x_ YES ___ If Yes, provide details.

5.   Within the past 3 years, have you been a principal owner or officer of any business or not-for-profit organization other than the one submitting the questionnaire? NO _x_ YES ___; If Yes, provide details.

LBBS (K-3) 000094

## APPENDIX D

6. Has any governmental entity awarded any contracts to a business or organization listed in Section 5 in the past 3 years while you were a principal owner or officer? NO ___ YES X__ If Yes, provide details.    See attachment entitled "Awards within the past three years"

<u>NOTE:</u> An affirmative answer is required below whether the sanction arose automatically, by operation of law, or as a result of any action taken by a government agency.
Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.

7. In the past (5) years, have you and/or any affiliated businesses or not-for-profit organizations listed in Section 5 in which you have been a principal owner or officer:

   a. Been debarred by any government agency from entering into contracts with that agency? NO X__ YES ____ If Yes, provide details for each such instance.

   b. Been declared in default and/or terminated for cause on any contract, and/or had any contract cancelled for cause? NO X__ YES ___ If Yes, provide details for each such instance.

   c. Been denied the award of a contract and/or the opportunity to bid on a contract, including, but not limited to, failure to meet pre-qualification standards? NO X__ YES ____ If Yes, provide details for each such instance.

   d. Been suspended by any government agency from entering into any contract with it; and/or is any action pending that could formally debar or otherwise affect such business's ability to bid or propose on contract? NO X__ YES ____ If Yes, provide details for each such instance.

8. Have any of the businesses or organizations listed in response to Question 5 filed a bankruptcy petition and/or been the subject of involuntary bankruptcy proceedings during the past 7 years, and/or for any portion of the last 7 year period, been in a state of bankruptcy as a result of bankruptcy proceedings initiated more than 7 years ago and/or is any such business now the subject of any pending bankruptcy proceedings, whenever initiated? If 'Yes', provide details for each such instance. (Provide a detailed response to all questions checked "YES". If you need more space, photocopy the appropriate page and attach it to the questionnaire.) No

   a) Is there any felony charge pending against you? NO X__ YES ___ If Yes, provide details for each such charge.

   b) Is there any misdemeanor charge pending against you? NO X__ YES ___ If Yes, provide details for each such charge.

   c) Is there any administrative charge pending against you? NO X__ YES ___ If Yes, provide details for each such charge.

   d) In the past 10 years, have you been convicted, after trial or by plea, of any felony, or of any other crime, an element of which relates to truthfulness or the underlying facts of which related

LBBS (K-3) 000096

## APPENDIX D

to the conduct of business? NO _X_ YES ___   If Yes, provide details for each such conviction.

e) In the past 5 years, have you been convicted, after trial or by plea, of a misdemeanor? NO _X_ YES ___   If Yes, provide details for each such conviction.

f) In the past 5 years, have you been found in violation of any administrative or statutory charges? NO _X_ YES ___   If Yes, provide details for each such occurrence.

9. In addition to the information provided in response to the previous questions, in the past 5 years, have you been the subject of a criminal investigation and/or a civil anti-trust investigation by any federal, state or local prosecuting or investigative agency and/or the subject of an investigation where such investigation was related to activities performed at, for, or on behalf of the submitting business entity and/or an affiliated business listed in response to Question 5? NO _X_ YES ___   If Yes, provide details for each such investigation.

10. In addition to the information provided, in the past 5 years has any business or organization listed in response to Question 5, been the subject of a criminal investigation and/or a civil anti-trust investigation and/or any other type of investigation by any government agency, including but not limited to federal, state, and local regulatory agencies while you were a principal owner or officer? NO _X_ YES ___   If Yes; provide details for each such investigation.

11. In the past 5 years, have you or this business, or any other affiliated business listed in response to Question 5 had any sanction imposed as a result of judicial or administrative proceedings with respect to any professional license held? NO _X_ YES ___   If Yes; provide details for each such instance.

12. For the past 5 tax years, have you failed to file any required tax returns or failed to pay any applicable federal, state or local taxes or other assessed charges, including but not limited to water and sewer charges? NO _X_ YES ___   If Yes, provide details for each such year.

LBBS (K-3) 000098

**APPENDIX D**


**CERTIFICATION**

A MATERIALLY FALSE STATEMENT WILLFULLY OR FRAUDULENTLY MADE IN CONNECTION WITH THIS QUESTIONNAIRE MAY RESULT IN RENDERING THE SUBMITTING BUSINESS ENTITY NOT RESPONSIBLE WITH RESPECT TO THE PRESENT BID OR FUTURE BIDS, AND, IN ADDITION, MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL CHARGES.

I, Bruce Teal _____, being duly sworn, state that I have read and understand all the items contained in the foregoing pages of this questionnaire and the following pages of attachments; that I supplied full and complete answers to each item therein to the best of my knowledge, information and belief; that I will notify the County in writing of any change in circumstances occurring after the submission of this questionnaire and before the execution of the contract; and that all information supplied by me is true to the best of my knowledge, information and belief. I understand that the County will rely on the information supplied in this questionnaire as additional inducement to enter into a contract with the submitting business entity.


Sworn to before me this _6_ day of  October,   2009


_____

Notary Public State of Florida
N Caplro
My Commission DD610155
Expires 10/30/2010

Notary Public



Armor Correctional Health Services
Name of submitting business

Bruce Teal
Print name

_____
Signature

CEO
Title

_1_ 0/ 0  6 / 0  9
Date

LBBS (K-3) 000100

# Living Wage

# Certificate of Compliance



**Armor**
Correctional Health Services, Inc.

## Armor Correctional Health Services

## Proposal

## Inmate Medical Services

## October 13, 2009

LBBS (K-3) 000102

APPENDIX "L"

Certificate of Compliance
Nassau County Living Wage Law.

In compliance with Local Law 1-2006, as amended, the County Lessee hereby certifies the following:

1. The chief executive officer of the County Contractor is:

    Bruce Teal _____ (Name)

    4960 SW 72nd Avenue, Miami, FL 33155 _____ (Address)

    ██████████ _____ (Telephone Number)

2. The County Contractor agrees to comply with all applicable requirements of the Nassau County Living Wage Law, and with all applicable federal, state and local laws.

3. In the past five years, County Contractor _____ has X _____ has not been found by a court or a government agency to have violated federal, state, or local laws regulating payment of wages or benefits, labor relations, or occupational safety and health. If a violation has been assessed by the County Contractor, describe below:

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

4. In the past five years, an administrative proceeding, investigation, or government body-initiated judicial action _____ has X _____ has not been commenced against or relating to the County Contractor. If such a proceeding, action, or investigation has been commenced, describe below:

    _____

LBBS (K-3) 000104

_____
_____
_____
_____
_____
_____
_____

5. County Contractor agrees to permit access to work sites and relevant payroll records by authorized County representatives for the purpose of monitoring compliance with the Living Wage Law and investigating employee complaints of noncompliance.

The Remainder of this Page Intentionally Left Blank

LBBS (K-3) 000106

CQCC 11000005

Department: Nassau County Sheriff's Department

# Contract Details

## E-68-11

SERVICE: Inmate Medical Care

NIFS ID #: CQCC 11000005    NIFS Entry Date: 3/21/11   Term: from 5/14/2011 to 5/13/2013

| | |
|---|---|
| New ☒ Renewal ☐ | 1) Mandated Program: |
| Amendment ☐ | 2) Comptroller Approval Form Attached: |
| Time Extension ☐ | 3) CSEA Agmt. § 32 Compliance Attached: |
| Addl. Funds ☐ | 4) Vendor Ownership & Mgmt. Disclosure Attached: |
| Blanket Resolution ☐ RES# | 5) Insurance Required |

| | Yes | No |
|---|---|---|
| 1) Mandated Program: | Yes ☒ | No ☐ |
| 2) Comptroller Approval Form Attached: | Yes ☐ | No ☐ |
| 3) CSEA Agmt. § 32 Compliance Attached: | Yes ☐ | No ☐ |
| 4) Vendor Ownership & Mgmt. Disclosure Attached: | Yes ☐ | No ☐ |
| 5) Insurance Required | Yes ☒ | No ☐ |

# Agency Information

**Vendor**

Name: Armor Correctional Health Services, of New York, Inc.
Address: 4960 S.W. 72 nd Ave. Suite 400 Miami, Fla. 33155

Vendor ID#
Federal Tax ID# 61-1642662
Contact Person: Karen Davies, V.P.
Phone: 954-649-3043

**County Department**

Department Contact: Elizabeth J. Loconsolo
Address: NCCC 100 Carman Avenue East Meadow, NY 11554
Phone: 516-572-3446

# Routing Slip

| DATE | DEPARTMENT | Contract Verification | | DATE | SIGNATURE | Leg. Approval Required |
|---|---|---|---|---|---|---|
| | Department | NIFS Entry (Dept) NIFS Appvl (Dept. Head) | ☑ ☐ | 3/21/11 | | |
| 3/22/11 | OMB | NIFS Approval | ☑ | 3/22/11 | | Yes ☒ No ☐ |
| | Vertical DCE | NIFS Approval | ☐ | | | |
| | Department | Vendor Administration NIFS Appvl (Dept. Head) | ☐ ☐ | | | |
| 3/22/11 | County Attorney | CA RE&I Verification | ☑ | 3/22/11 | | |
| 3/22/11 | County Attorney | CA Approval as to form | ☑ | 3/22/11 | Loconsolo | Yes ☒ No ☐ |
| | Legislative Affairs | Fw'd Original K to CA | ☐ | 3/22/11 | Gregory A. May | |
| | Rules ☐ / Leg. ☐ | | ☐ | 4/25/11 | | |
| | County Attorney | NIFS Approval | ☐ | 4/1/11 | | |
| | County Comptroller | NIFS Approval | ☐ | 4/20 | | |

PR 5254 (8/03)

LBBS (K-3) 000108

Contract                                                          Department: Nassau County Sheriff's Department

| | County Executive | Notarization Filed with Clerk of the Leg. 12/11 | | |
|---|---|---|---|---|

# Contract Summary

**Description:** Medical, Mental Health, Dental & Ancillary Services to inmates in the custody of the NC Sheriff's Dept.

**Purpose:** Vendor to provide the above-referenced services to inmates in the custody of NC Sheriff's Department and/or incarcerated at NCCC.

**Method of Procurement:** Request for Proposals (#SHO723-0924) published on July 30, 2009.

**Procurement History:** RFP was published on 7/30/09; proposals were due and received on 10/13/09; letter of award to selected vendor, Armor, was sent out January 4, 2011.

**Description of General Provisions:** The vendor will be responsible for providing medical, mental health, dental and ancillary services to inmates incarcerated at NCCC; for operating an onsite infirmary and onsite specialty clinics; for making appropriate referrals for hospital admissions, ER and offsite services not available at NCCC.

**Impact on Funding / Price Analysis:** The funding for the first year is $██████████ the 2nd year funding may be increase by the Consumer Price Index or 4%, whichever is lower.

**Change in Contract from Prior Procurement:** No prior procurement history for these services.

**Recommendation:** (approve as submitted)

# Advisement Information

| BUDGET CODES | | FUNDING SOURCE | AMOUNT | LINE | INDEX/OBJECT CODE | AMOUNT |
|---|---|---|---|---|---|---|
| Fund: | GEN | Revenue Contract ☐ | XXXXXXX | 1 | CCGEN1320/DE524 | |
| Control: | 10 | County | ██████ | 2 | | $ |
| Resp: | 1320 | Federal | $ | 3 | | $ |
| Object: | 524 | State | $ | 4 | | $ |
| Transaction: | CQ | Capital | $ | APPROVED: A. D'Amato 3/22/11 | | $ |
| | | Other | $ | INSURANCE SECTION | | $ (DATE) |
| | | **TOTAL** | ██████ | | **TOTAL** | ████ |

| RENEWAL | |
|---|---|
| % Increase | |
| % Decrease | |

Document Prepared By: Elizabeth J. Loconsolo          Date: 3/22/11

| NIFS Certification | Comptroller Certification | County Executive Approval |
|---|---|---|
| I certify that this document was accepted into NIFS. | I certify that an uncumbered balance sufficient to cover this contract is present in the appropriation to be charged. | Name |
| Name | Name | Date 3/22/11 |
| | 4/28/11 | |

PR5254 (8/03)

4. In the past five years, an administrative proceeding, investigation, or government body-initiated judicial action _____ has __X__ has not been commenced against or relating to the Contractor in connection with federal, state, or local laws regulating payment of wages or benefits, labor relations, or occupational safety and health. If such a proceeding, action, or investigation has been commenced, describe below:

_____

_____

_____

_____

_____

_____

_____

5. Contractor agrees to permit access to work sites and relevant payroll records by authorized County representatives for the purpose of monitoring compliance with the Living Wage Law and investigating employee complaints of noncompliance.

I hereby certify that I have read the foregoing statement and, to the best of my knowledge and belief, it is true, correct and complete. Any statement or representation made herein shall be accurate and true as of the date stated below.

3/18/11
_____        _____
Dated                           Signature of Chief Executive Officer

                                ___Bruce A. Teal_____
                                Name of Chief Executive Officer

Sworn to before me this
18 day of March, 2011.

_____
Notary Public

The undersigned Armor Correctional Health Services, Inc., sister

corporation, joins in the execution and authorizes the delivery of this Agreement for
the purpose of evidencing its acceptance of and agreement to be jointly and
severally liable for the performance and payment of all of the obligations of its ~sister~
~corporation~ ~wholly-owned subsidiary~, Armor Correctional Health Services of New York, Inc.,
~(NY)~ under this Agreement.


ARMOR CORRECTIONAL HEALTH SERVICES, INC.

By: _Karen Davis_

Name: _KAREN DAVIS_

Title: _Vice President_

Date: _04/04/2011_

---

Sworn to before me this _Fourth_ day of April, 2011:

_Warren Vandewater Jr._

WARREN VANDEWATER JR.
NOTARY PUBLIC STATE OF N.Y.
NO. 01VA6143446
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES APRIL 10, 2014

```
DOCUMENT CATEGORY        : CQ CONTRACT NON-CAPITAL
ENTERED BY               : VANDEWATER, WARREN, 2-3813
DOCUMENT NUMBER          : CQCC11000005          INITIATING DEPT  : CC
INPUT PERIOD (MM YYYY)   : 03 2011 MARCH
VENDOR NUMBER / SUFFIX   : 611642662  01          APPROVAL TYPE    : 01
VENDOR NAME              : ARMOR CORRECTIONAL HEALTH SERVICES OF NY
VENDOR ADDRESS           : 4900 SW 72ND AVENUE
                           SUITE 400
                           MIAMI                     FL 33155
COUNTRY                  : USA
ALPHA VENDOR             : ARMOR CORRECTIONAL HEALTH
BANK NUMBER              :                       TREAS NO          :
DUE DATE                 :                       SINGLE CHECK      :
DOCUMENT AMOUNT          :        ████████        CURRENCY CODE     :
NUMBER OF LINES          : 1                      RESPONSIBLE UNIT  :
TRANSACTION CODE HASH    :
TERMS                    :                        NOTEPAD (Y OR N) : Y
POSTING/EDIT ERRORS      :
F1-HELP     F2-SELECT    F3-DELETE    F4-PRIOR    F5-NEXT      F6-DTL ENTRY
F7-VIEW DOC F8-SUBMIT    F9-LINK      F10-SAVE                 F12-ADL FCTNS
G014 - RECORD FOUND
```

FAML4050 V4.2                       NTFS PRODUCTION SYSTEM              03/21/2011
LINK TO: .                 ENCUMBRANCE / ACC RECEIV BLE DOCUMENTS          4:43 PM

DOCUMENT : CQCC11000005 - 01  INPUT PER: 03 2011 AMOUNT :  ███████████
----------------------------------------------------------------------
TRANS CODE       : 103  CONTRACT ENCUMBRANCE WITH OUT PRIOR PRE-ENCUMBRANCE
DOCUMENT REF     :
TRANS DESC.      : MEDICAL CARE TO INMATES
TRANS AMOUNT     :  ████████████
INDEX            : CCGEN1320       MEDICAL SERVICES UNIT
SUBOBJECT        : DE524           MEDICAL/PSYCHIATRIC SERVICES
UCODE/ORD#/DRC   :
GRANT            :
GRANT DETAIL     :
PROJECT          :
PROJECT DETAIL   :
START DATE       :
END DATE         :


FINANCIAL ERRORS :
F1-HELP      F2-SELECT      F3-DELETE      F4-PRIOR      F5-NEXT
F7-VIEW DOC                 F9-LINK        F10-SAVE
G014 - RECORD FOUND

```
VENDOR          : 201422279   NAME: ARMOR CORRECTIONAL HEALTH SERVICES, INC.
ALT. NAMES      : ARMOR CORRECTIONAL HEALTH

                                                NOTES  : N
                                                UPDATED: 06/02/09
                                                DELETE (Y/N):
ALT. VENDOR ID: F201422279          STATUS CODES:
SALES ADDRESS : 4960 SW 72ND AVENUE
                SUITE 400
          CITY: MIAMI                 ST: FL ZIP: 33155     CTRY: USA
ALT/REMIT ADDR: 4960 SW 72ND AVENUE
                SUITE 400
          CITY: MIAMI                 ST: FL ZIP: 33155     CTRY: USA
CONTACT       : DONALD MORGAN
TELEPHONE     : 305 662 8522 EXT.     DISCOUNT TERMS:
FAX           : 305 662 8039             EXPEDITOR CODE :
DELETE REASON :


F1-HELP         F3-DELETE   F5-NEXT              F6-VIEW COMMOD F7-ADDR
F9-LINK         F10-SAVE    F11-INTERFACE VENDOR ENTER-INQUIRE  CL-EXIT
INQUIRY SUCCESSFUL, TRANSACTION READY FOR UPDATE
```

Liz,

Per Our Conversation.

Thanks,

W.V.



# NASSAU COUNTY REQUEST FOR TAXPAYER IDENTIFICATION NUMBER AND CERTIFICATION

Authorization is:
(CHECK ONE)
[ ] New
[ ] Change

**INSTRUCTIONS:** Please complete Section I. If you would like to be paid electronically please complete both sections of this form.

Mail to: Nassau County Comptroller's Office, Vendor Claims Department, 240 Old County Road, Mineola, New York 11501
Or Fax to: (516) 571-2533.

## Section I – Vendor Information

**1. Federal ID No or Social Security No.** 6 1 1 6 4 2 6 6 2

**2. Vendor Name:** ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC.

**3. Vendor Remittance Address:** 4900 S.W. 72nd AVENUE
SUITE 400
MIAMI, FLORIDA 33155

**4. Vendor Contact Person :**

**5. Vendor Contact Telephone No.:**

**6. Vendor E-Mail Address:**

**7. Please answer the four questions below. Unanswered questions will delay payment.**

A. The vendor/payee ID number provided above is:
Federal ID# [ ] Social Security # [✓]

B. Is vendor/payee incorporated:
Yes [✓] No

C. Is a medical or legal service ever provided by vendor:
Yes [✓] No

D. Is vendor/payee an employee of Nassau County:
Yes   No [✓]

## Section II –Financial Institution Information-Complete this section only if you would like to be paid electronically.

**8. Routing Transit Number:**
*(Located at the bottom of your check)*

**9. Bank Account Number:**

**10. Account Name** *(Your name on the account)*:

**11. Bank Name:**

**Check here [  ] if you wish to be removed from electronic payments and would like to receive paper checks.**

**12. Vendor Certification:** Certification-Under penalties of perjury, I certify that: (1) The number shown on this form is my correct identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified me that I am no longer subject to backup withholding. (3) The information provided on this form is correct to the best of my knowledge. Certification Instructions-You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of under reporting interest or dividends on your tax return. For real estate transactions, item (2) does not apply. The IRS does not require your consent to any provision of this document other than the certification required to avoid backup withholding.
I understand that if I have completed Section II that I authorize payments to be received by electronic funds transfer into the bank account designated in Section II. I further understand that in the event that an erroneous electronic payment is sent, Nassau County reserves the right to reverse the electronic payment, In the event that a reversal cannot be implemented, Nassau County will utilize any other lawful means to retrieve payments to which the payee was not entitled.

_____
Authorized Signature

_____
Print Name/Title

_____
Date

Office use only; disburse type 2   account type C
Nassau County Comptroller's Office

LBBS (K-3) 000116

FORM#700-W9 Revised January 2009



# NASSAU COUNTY REQUEST FOR TAXPAYER IDENTIFICATION NUMBER AND CERTIFICATION

Authorization is: (CHECK ONE)
[ ] New
[ ] Change

**INSTRUCTIONS:** Please complete Section I and sign at the bottom. If you would like to be paid electronically please complete Sections I and II and sign at the bottom.

**Mail to:** Nassau County Comptroller's Office, Vendor Claims Department, 240 Old Country Road, Mineola, NY 11501
Or Fax to: (516) 571-2533 or email to comptrollerclaims@nassaucountyny.gov

## Section I — Vendor Information

1. Federal ID No. or Social Security No.  `6 1 1 6 4 2 6 6 2`

2. Vendor Name: Armor Correctional Health Services of New York

3. Vendor Remittance Address: 4960 SW 72nd Avenue, Suite 400, Miami, Florida 33155

4. Vendor Contact Person: Lissette Sardinas
5. Vendor Contact Telephone No.: (305) 662-8522
6. Vendor E-Mail Address: lsardinas@armorcorrectional.com
7. Please answer the four questions below. Unanswered questions will delay payment.
   A. The vendor/payee ID number provided above is: Federal ID# [X] Social Security # [ ]
   B. Is vendor/payee incorporated: Yes [X] No [ ]
   C. Is a medical or legal service ever provided by vendor: Yes [X] No [ ]
   D. Is vendor/payee an employee of Nassau County: Yes [ ] No [X]

## Section II - Financial Institution Information- Complete this section only if you would like to be paid electronically

8. Routing Transit Number: `0 6 7 0 0 6 4 3 2`
   *(Located at the bottom of your check)*
9. Bank Account Number: 2 0000 282695 62
10. Account Name *(Your name on the account)*: Armor Correctional Health Services, Inc.
11. Bank Name: Wachovia Bank

Check here [ ] if you wish to be removed from electronic payments and would like to receive paper checks.

**12. Vendor Certification:** Certification-Under penalties of perjury, I certify that: (1) The number shown on this form is my correct identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified me that I am no longer subject to backup withholding, (3) The information provided on this form is correct to the best of my knowledge. Certification Instructions-You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of under reporting interest or dividends on your tax return. For real estate transactions, item (2) does not apply. The IRS does not require your consent to any provision of this document other than the certification required to avoid backup withholding.
I understand that if I have completed Section II that I authorize payments to be received by electronic funds transfer into the bank account designated in Section II. I further understand that in the event that an erroneous electronic payment is sent, Nassau County reserves the right to reverse the electronic payment. In the event that a reversal cannot be implemented, Nassau County will utilize any other lawful means to retrieve payments to which the payee was not entitled.

_____
Authorized Signature

Bruce Teal
_____
Print Name/Title

3/21/11
_____
Date

Nassau County Comptroller's Office

LBBS (K-3) 000117

FORM#700-W9

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 03/10/2011 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | | CONTACT NAME: | Anya Peñate | |
|---|---|---|---|---|---|---|
| BenTrust AIB, LLC | | | | PHONE (A/C, No, Ext): (305) 444-8350 x | | FAX (A/C, No): (305) 444-8501 x |
| 701 Waterford Way, Suite 300 | | | | E-MAIL ADDRESS: | | |
| | | | | PRODUCER CUSTOMER ID #: | | |
| Miami | FL | 33126 | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | | | | INSURER A: | Landmark American Insurance Company | |
| Armor Correctional Health Services, In | | | | INSURER B: | | |
| 4960 SW 72 Avenue | | | | INSURER C: | | |
| Suite 400 | | | | INSURER D: | | |
| Miami | FL | 33155 | | INSURER E: | | |
| | | | | INSURER F: | | |

COVERAGES         CERTIFICATE NUMBER:         REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| a | GENERAL LIABILITY | X | | LHC728238 | 12/1/2010 | 12/1/2011 | EACH OCCURRENCE | $ 1,000,000 |
| | v COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | v v CLAIMS-MADE [ ] OCCUR | | | | | | MED EXP (Any one person) | $ |
| | v Medical | | | | | | PERSONAL & ADV INJURY | $ |
| | Professional Liability | | | | | | GENERAL AGGREGATE | $ 5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | POLICY [ ] PRO-JECT [ ] LOC | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | HIRED AUTOS | | | | | | | $ |
| | NON-OWNED AUTOS | | | | | | | $ |
| | UMBRELLA LIAB [ ] OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DEDUCTIBLE | | | | | | | $ |
| | RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | WC STATU- TORY LIMITS [ ] OTH-ER [ ] | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liability | | | LHC728238 | 12/1/2010 | 12/1/2011 | Aggregate: $5,000,000 | |
| | | | | | | | Each Occurence: $1,000,000 | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Certificate Holder is listed as additional insured

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Nassau County Correctional Facility 100 Carman Ave. East Meadow, NY 11554 516 572-4100 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |
| | Anya Peñate |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)         The ACORD name and logo are registered marks of ACORD

LBBS (K-3) 000118

# ACORD CERTIFICATE OF LIABILITY INSURANCE

Page 1 of 1

| DATE (MM/DD/YYYY) |
|---|
| 03/15/2011 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | |
|---|---|---|---|
| Willis of Tennessee, Inc. 26 Century Blvd. P. O. Box 305191 Nashville, TN 37230-5191 | | PHONE (A/C, NO, EXT): 877-945-7378 | FAX (A/C, NO): 888-467-2378 |
| | | E-MAIL ADDRESS: certificates@willis.com | |
| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
| INSURED | | INSURER A: Wausau Underwriters Insurance Company | 26042-002 |
| Armor Correctional Health Services 4960 SW 72nd AVE MIAMI, FL 33155 | | INSURER B: Employers Insurance Company of Wausau | 21458-013 |
| | | INSURER C: Zurich American Insurance Company | 16535-004 |
| | | INSURER D: | |
| | | INSURER E: | |
| | | INSURER F: | |

## COVERAGES    CERTIFICATE NUMBER: 15631470    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADD'L INSRD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ |
| | CLAIMS-MADE [ ] OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | POLICY [ ] PRO-JECT [ ] LOC [ ] | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | ASJZ91443850020 | 12/1/2010 | 12/1/2011 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | X ALL OWNED AUTOS    X SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS    X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **UMBRELLA LIAB** [ ] OCCUR | | | | | | EACH OCCURRENCE | $ |
| | **EXCESS LIAB** [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED [ ] RETENTION $ | | | | | | | $ |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**    Y/N | | | WCCZ91443850010 | 12/1/2010 | 12/1/2011 | X WC STATU-TORY LIMITS    OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [N]    (Mandatory in NH) | | N/A | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| C | Crime | | | FID938190602 | 3/1/2011 | 3/1/2012 | $1,000,000 Limit | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach Acord 101, Additional Remarks Schedule, if more space is required)

## CERTIFICATE HOLDER

Nassau County Sheriff's Office
100 Carman Ave.
East Meadow, NY 11554

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

*[signature]*

LBBS (K-3) 000779/

Coll:3297507  Tpl:1234922  Cert:15631470    © 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

LBBS (K-3) 000120

*E-68-11*

RULES RESOLUTION NO. 99 2011

A RESOLUTION AUTHORIZING THE COUNTY EXECUTIVE
TO EXECUTE A PERSONAL SERVICES AGREEMENT BETWEEN
THE COUNTY OF NASSAU ACTING ON BEHALF OF THE NASSAU
COUNTY SHERIFF'S DEPARTMENT AND ARMOR CORRECTIONAL
HEALTH SERVICES OF NEW YORK, INC.

**Passed by the Rules Committee**
Nassau County Legislature
By Voice Vote on  4/18/11
VOTING:
ayes 4 nayes 2 abstained____ recused____
Legislators present: 6

WHEREAS, the County has negotiated a personal services agreement
with Armor Correctional Health Services of New York, Inc. for services in
connection with providing medical, mental health, dental and ancillary
services to inmates incarcerated at the Nassau County Correctional Center, a
copy of which is on file with the Clerk of the Legislature; now, therefore, be
it

RESOLVED, that the Rules Committee of the Nassau County
Legislature authorizes the County Executive to execute the said agreement
with Armor Correctional Health Services of New York, Inc.

RULES RESOLUTION NO.   – 2011

A RESOLUTION AUTHORIZING THE COUNTY EXECUTIVE
TO EXECUTE A PERSONAL SERVICES AGREEMENT BETWEEN
THE COUNTY OF NASSAU ACTING ON BEHALF OF THE NASSAU
COUNTY SHERIFF'S DEPARTMENT AND ARMOR CORRECTIONAL
HEALTH SERVICES OF NEW YORK, INC.

WHEREAS, the County has negotiated a personal services agreement
with Armor Correctional Health Services of New York, Inc. for services in
connection with providing medical, mental health, dental and ancillary
services to inmates incarcerated at the Nassau County Correctional Center, a
copy of which is on file with the Clerk of the Legislature; now, therefore, be
it

RESOLVED, that the Rules Committee of the Nassau County
Legislature authorizes the County Executive to execute the said agreement
with Armor Correctional Health Services of New York, Inc.

(d)  All services as set forth in the Performance Indicators and
Measurements, Attachment D attached hereto and incorporated herein by
reference; however, there shall be a six (6) month grace period from
commencement of services pursuant to this Agreement before
withholds/penalties/liquidated damages may be applied;

(e)  Contractor shall perform a medical and mental health intake
screening on all inmates within four [4] hours of admission to NCCC. A
full health assessment shall be performed within seven [7] days of
admission to NCCC.  Intake shall be available 24 hours / 7 days per
week.

(f)  Contractor shall perform sick call a minimum of [5] five days per week,
A licensed physician shall be on call 24 hours per day, seven days per
week for immediate access by non-physician providers.  Registered
Nurses shall be guided by physician-approved nursing protocols.

(g)  Contractor shall have emergency services available 24 / 7, which
services shall minimally include a registered nurse on site on the
response team, with a licensed physician on call 24 hours per day.

(h)  All patients with known or suspected chronic conditions will be seen
by an HCPP for examination within seven [7] days of admission to NCCC
or discovery of such condition.  Contractor shall develop and maintain a
chronic care disease management program consistent with nationally
accepted disease guidelines and shall include a current chronic disease
registry of inmates.  Chronic care clinics will minimally include asthma,
cardiac, diabetes, neurology, hypertension and infectious disease.

(i)      Radiology services:  Armor shall provide radiology services on site
whenever possible.  Abnormal results of significance shall be reported to
the HCPP within 3 hours of the finding, and the action taken shall be
documented in the medical record.  All other results shall be reported,
addressed and documented in the medical record within five (5) days.

(j)  Laboratory services: Armor shall provide laboratory services on site
whenever possible.  Critical results shall be reported to the HCPP
within 3 hours of the finding, and the action taken shall be documented in
the medical record.  All other results shall be reported, addressed and
documented in the medical record within five (5) days.  Contractor will
provide copies of all laboratory reports to the County Department of
Health as required pursuant to New York State and Local Laws.

(k) 1. Mental health services shall be provided in accordance with all
applicable laws and regulations including but not limited to the standards

4.

promulgated by the New York State Commission of Correction, incorporated herein by reference, and the provisions of the DOJ Settlement (incorporated herein by reference and attached hereto as Attachment E). Patients who have routine referrals for mental health services shall be evaluated within 72 hours of referral. Emergency referrals shall be processed immediately and evaluated by the first available qualified staff.

2. Mental health staff shall conduct segregation rounds, three times weekly, in each housing area in which inmates are in administrative segregation.

3. Patients placed in mental health housing shall be seen by a clinician a minimum of once per week, and a minimum of once every two weeks by a psychiatrist. All instances of self injury shall be documented and the inmate shall be immediately assessed by the by the health care practitioner.

(l) Provision of Services to Sheriff's Department Personnel.

(1) First Aid. Contractor shall provide on-site first aid services to correctional personnel working at NCCC and to civilian personnel on-site, when doing so does not jeopardize the provision of inmate healthcare. In the event of an emergency, the services to be rendered by the HCPP or HCP will consist first of triage-type evaluation, then, if the patient's condition warrants, stabilization pending transfer to acute care.

(2) Medical Screening Services for Sheriff's Department Correctional Personnel. NHCC shall, on a yearly basis, offer a tuberculosis screening test (PPD) and Hepatitis B vaccination for all Sheriff's Department correctional personnel. County shall provide all supplies and vaccine. Contractor shall maintain a tracking and follow up system for all officers in the employ of the Sheriff's Department. Contractor shall participate in the administration of the Department's program to provide such medical screening and vaccinations pursuant to the protocoldeveloped jointly by the parties hereto.

(m) Provision of Emergency Services to Visitors at NCCC. In accordance with policies and procedures to be established by Contractor, and approved by the Department, for responding to emergency healthcare situations at NCCC, in the event of an emergency, Contractor shall provide triage-type

5.

evaluation on-site of visitors at NCCC and, if the patient's condition warrants, stabilization pending transfer to acute care.(n ) Inpatient and emergency care referrals, consistent with the established standards of care as set forth in Attachment F, annexed hereto.

(o) Pharmacy services. Contractor shall provide pharmacy services, which services shall minimally include the provision of all formulary medications, a drug utilization program and a drug formulary, which shall be subject to review and approval by the Pharmacy and Therapeutics Committee and the Sheriff's Department. Armor shall maintain a written plan for the procurement of non-formulary medications, and shall be responsible for the provision of same.

Armor shall use best efforts to obtain and maintain a Keep on Person [inmate self medication program] medication waiver from the New York State Commission of Correction within six [6] months of the date of this Agreement.

(p) Discharge Planning: Armor shall be responsible for the discharge planning of inmates who require medical or mental health services post-discharge. Such planning shall minimally include the provision of discharge medication or prescriptions pursuant to the DOJ Settlement (Attachment E hereto), referrals for health care follow up and to the extent possible, integration into the community. Contractor shall, in advance, prepare appropriate prescriptions to be provided to inmates upon discharge in the event there is insufficient notice to provide the actual discharge medication.

(q) Substance abuse treatment: (1) Contractor shall assess all inmates at intake for drug and/or alcohol dependency and symptoms of withdrawal. All inmates w/disease or symptoms shall be referred to mental health for assessment and follow-up. (2) Contractor shall assess all inmates upon completion of drug and/or alcohol dependency withdrawal and refer patient to mental health for assessment for self harm potential.

(r) Contractor shall maintain accreditation by NCCHC of NCCC's Opioid Treatment Program (OTP) and SAMHSA certification for the `Department's OTP, and shall administer the program in accordance with existing policies approved by the Department.

(s) Dental care: Armor shall provide all inmates with dental screening within [7] seven days of admission to NCCC. Services shall not include elective procedures, and shall include services for the purpose of relieving pain and/or ensuring the inmates ability to maintain proper

6.

nutrition.

(t)  Contractor shall create and implement policies and procedures, that are reviewed and approved by the Department, for all services provided pursuant to this Agreement.

(u)  NCCHC Accreditation.  Contractor shall provide services, consistent with this Agreement, in a manner designed to achieve NCCHC accreditation, and shall be prepared to and shall apply for such accreditation within twelve (12) months of the commencement of the provision of services pursuant to this Agreement.

(v)  Hemophilia.  Contractor shall be responsible to provide all necessary medical, mental health and ancillary services to inmates diagnosed with hemophilia.  County shall be responsible for the costs for blood products and medicines necessary to treat hemophiliacs solely for the condition of hemophilia, or required to be utilized due to the inmate's condition of hemophilia.

In the event of a perceived or actual conflict between any of the provisions concerning services to be provided, the terms of the following related documents shall be controlling in the following order: the Agreement and Attachments C, D, E, F and G hereto; RFP #SH0723-0924; and Contractor's proposal (Attachment B hereto).

4.    <u>Reporting Requirements</u>.  Within the first ten (10) calendar days of each month, Contractor shall provide Health Contract Administrator with reports reflecting the following information:

(a)  <u>Inpatient</u>:
- DRG discharge diagnoses (in the month following Contractor's receipt of the inpatient bill)
- # admissions and discharges
- Medical and psych inpatient costs
- ALOS medical and psych [# patients, # days]
- # outpost, # outpost days
- Prison ward utilization stats: medical and mental health
- Prison ward utilization review reports

(b)  <u>Outpatient</u>:
- # on site and off site referrals by service
- ED run log including # referrals vs. inpatient admits, date, time, diagnosis, and referring practitioner

(c)  <u>Intake</u>:
- # new admits screened at intake; % seen within 4 hours

7.

- % receiving full health assessment within 7 days
- Length of stay on new admit housing

(d) On-site:
- Infirmary:      Admissions by Diagnosis
                  Bed utilization statistics
                  % patients transferred to acute care
- Revisions to initial staffing plan; vacancy rate
- Overtime hours by title / Department
- Staffing reports with justification when required by County
- Grievances: founded, unfounded, category and disposition
- Medical sick call stats, including # requests, # seen by RN, # seen by practitioner, total requests and % seen within 72 hours of request
- Mental health sick call stats, including # sick call requests, % seen within 72 hrs, # scheduled encounters
- # constant supervision patients and days
- self injury and suicide stats
- TB, PPD, STD and HIV statistics
- Vaccine report [Twinrix, Pneumo]
- # chronic care clinic referrals by service, % patients seen in chronic care within 7 days of admission

(e) The parties acknowledge and agree that all information and data relative to patient care, quality of care, utilization review, quality improvement and expenses shall be made available to the County and the Health Contract Administrator for review. The Health Contract Administrator shall be responsible for contract compliance through review of all medical billing, written minutes, inmate inpatient and on-site medical records, all available statistical data including but not limited to the monthly health services reports and any additional information as warranted.

5. Quality Improvement Program.

(a). Contractor will implement a functional, interdisciplinary quality improvement program for medical and mental health care, which shall include development of a written quality improvement plan that includes annual self evaluation, the provision of evaluations and recommendations regarding clinical guidelines, reviews and, where appropriate, revision of performance indicators in Attachment D, internal peer review and the establishment of a Quality Improvement Committee [QIC].

(b)      The QIC shall be responsible for implementation of the quality improvement plan and shall serve as the conduit for all quality improvement

8.

activities. The QIC shall be chaired by a physician and shall include a multi-disciplinary review necessary to properly review the status of health care provided to inmates at NCCC. The QIC chair may appoint sub-committees for focus work. The QIC shall meet ten [10] out of twelve [12] months each year, and shall record or take minutes of its meetings and maintain records of documents or files reviewed. The NCCC Quality Improvement coordinator shall report monthly, in person, to the Sheriff and to the Health Contract Administrator. The program will include an annual work description; a work plan; and a program evaluation. The QIC will develop written protocols for regularly providing workshops regarding the provision of medical and mental health care to clinical and administrative staff. Sub-committee and sub-committee reports shall minimally include:

- Mortality and morbidity conference
- Infection control committee
- Any inmate-related root cause analyses, untoward peer review outcomes and inmate incident reports and investigations.

(c) The QIP shall be developed and implemented consistent with the provisions of the DOJ Settlement (Attachment E).

(d) There shall be a utilization review committee responsible for [a] credentialing and review, [b] utilization review, [c] compliance, and [d] patient satisfaction. These programs/ shall submit reports on a monthly and/or quarterly basis to the Health Contract Administrator.

6.    Payment. (a) Amount of Consideration. (1). The base compensation amount to be paid to the Contractor as full consideration for the Contractor's services under this Agreement for the first twelve (12) months shall be ███████████████ ███████████████████████████████████ should County wish to have Armor process all offsite claims and the County pay them directly.

(2) In addition to the base compensation, the County shall pay ████████████ ███████████████████ per diem for each inmate, who is in custody of the Department for more than four hours, in excess of 1650 average daily population.

(3) Offsite Services: Cost-sharing. The County and the Contractor shall share the cost of Offsite Services that exceed ████████████████████████████. The shared costs shall be calculated using a two-step process:

During the first year of this Agreement:

(i) On any bill for Offsite Services that does not exceed ████████████████

9.

██████████████ per inmate, the Contractor shall pay ██████████
██ %) and the County shall pay ████████████████

(ii)  On any costs that exceeds ████████████████████ per inmate,
The Contractor shall pay the first ███████████████████ and the County shall pay the remaining portion of the costs.

(iii)  Shared savings if offsite costs are less than █████████ for

[Example for Cost-sharing Provisions: Offsite Services for the year are $2,000,000.  County already paid Contractor $750,000, which brings the remaining costs to $1,250,000.  Four inmate's inpatient costs are $75,000 each, which totals $300,000.  That amount is deducted from the $1,250,000, which brings the overage to $950,000.  Contractor will absorb $570,000; the County will be responsible for $380,000.  With respect to the $300,000, Contractor will absorb $200,000; the County will be responsible for $100,000. ]

(b)     Amount of Consideration: Second Year.  (1)  For the second year of this Agreement, the base compensation amount and per diem shall be adjusted by the annual CPI (Consumer Price Index), Medical care Expenditure category for the Northeast Region or four percent (4%), whichever is lower.

(2)  County and Contractor shall renegotiate the cost-sharing formula for Offsite Services, but in no event shall Contractor's cost-sharing responsibility be less than ████████████████████ s described in (a) (3) (ii) above, or less than ██ % as described in (a) (3) (i):

(c)     Amount of Consideration: Renewal Periods.  Should the County exercise its option to renew this Agreement, the parties shall renegotiate the base  compensation, per diem rate and average daily population cap, and cost-sharing payment terms based upon the increase or decrease in actual costs incurred during the previous year, and the CPI.  Such negotiations shall occur at least sixty days prior to the end of the current contract year.

(d)  Payments shall be made as follows:  Contractor shall submit a County Claim Voucher for payment for two (2) months of services upon commencement of services pursuant to this Agreement, and the County shall pay said Voucher within sixty (60) days from receipt.  At the start of each subsequent month, Contractor will submit a County Claim Voucher for payment, and the County shall pay said Voucher within sixty (60) days from receipt.  Payment adjustments for assessments against Contractor as reflected in the Performance Indicators and Measurements, Attachment D hereto, per diems etc, shall be included in the subsequent month's claim voucher.

(e)  Should there be any change in Law, or any change in applicable standards, that has a substantive impact on the delivery of Services pursuant to this Agreement, or

10.

a change in the scope or delivery of services requested of the County, that results in increased or decreased costs to the Contractor, the parties hereto agree to discuss and make any necessary adjustments.

(f) Vouchers; Voucher Review, Approval and Audit. Payments shall be made to the Contractor in arrears and shall be contingent upon (i) the Contractor submitting a claim voucher (the "Voucher") in a form satisfactory to the County, that (a) states with reasonable specificity the services provided and the payment requested as consideration for such services, (b) certifies that the services rendered and the payment requested are in accordance with this Agreement, and (c) is accompanied by documentation satisfactory to the County supporting the amount claimed, and (ii) review, approval and audit of the Voucher by the Department and/or the County Comptroller or his or her duly designated representative (the "Comptroller").

*Invoices*

(g) Timing of Payment Claims. The Contractor shall submit claims no later than three (3) months following the County's receipt of the services that are the subject of the claim and no more frequently than once a month. Notwithstanding the foregoing, Contractor must submit *Invoice* claims for any offsite services provided at the Nassau University Medical Center (NUMC) within two (2) months of receipt of the NUMC invoice. With respect to claims based on subcontractors' services, Contractor must submit said claims within two (2) months of receipt of said invoices, but in no event more than six (6) months from the date the service was provided.

(h) No Duplication of Payments. Payments under this Agreement shall not duplicate payments for any work performed or to be performed under other agreements between the Contractor and any funding source including the County.

(i) Payments in Connection with Termination or Notice of Termination. Unless a provision of this Agreement expressly states otherwise, payments to the Contractor following the termination of this Agreement shall not exceed payments made as consideration for services that were (i) performed prior to termination, (ii) authorized by this Agreement to be performed, and (iii) not performed after the Contractor received notice that the County did not desire to receive such services.

7.  Independent Contractor. The Contractor is an independent contractor of the County. The Contractor shall not, nor shall any officer, director, employee, servant, agent or independent contractor of the Contractor (a "Contractor Agent"), be (i) deemed a County employee, (ii) commit the County to any obligation, or (iii) hold itself, himself, or herself out as a County employee or Person with the authority to commit the County to any obligation. As used in this Agreement the word "Person" means any individual person, entity (including partnerships, corporations and limited liability companies), and government or political subdivision thereof (including agencies, bureaus, offices and departments thereof).

8.  No Arrears or Default. The Contractor is not in arrears to the County upon any debt or contract and it is not in default as surety, contractor, or otherwise upon any

11.

LBBS (K-3) 000130

obligation to the County, including any obligation to pay taxes to, or perform services for
or on behalf of, the County.

9.    Compliance with Law.  (a)  Generally.  The Contractor shall comply with any
and all applicable Federal, State and local Laws, including, but not limited to HIPAA, those
relating to conflicts of interest, discrimination, a living wage, disclosure of information, and
vendor registration, in connection with its performance under this Agreement. Infurtherance
of the foregoing, the Contractor is bound by and shall comply with the terms of Appendix EE
attached hereto and with the County's vendor registration protocol. As used in this
Agreement the word "Law" includes any and all statutes, local laws, ordinances, rules,
regulations, applicable orders, and/or decrees, as the same may be amended from time to
time, enacted, or adopted.

(b) Nassau County Living Wage Law.  Pursuant to LL 1-2006, as amended,
and to the extent that a waiver has not been obtained in accordance with such law or
any rules of the County Executive, the Contractor agrees, as follows:

(i)    Contractor shall comply with the applicable requirements of the
Living Wage Law, as amended;

(ii)    Failure to comply with the Living Wage Law, as amended, may
constitute a material breach of this Agreement, the occurrence of
which shall be determined solely by the County. Contractor has
the right to cure such breach within thirty days of receipt of notice
of breach from the County. In the event that such breach is not
timely cured, the County may terminate this Agreement as well as
exercise any other rights available to the County under applicable
law.

(iii)    It shall be a continuing obligation of the Contractor to inform the
County of any material changes in the content of its certification of
compliance, attached as Appendix L,  and shall provide to the
County any information necessary to maintain the certification's
accuracy.

(c)  Records Access.  The parties acknowledge and agree that all records,
information, and data ("Information") acquired in connection with performance or
administration of  this Agreement shall be used and disclosed solely for the purpose of
performance and administration of the contract or as required by law.  The Contractor
acknowledges that Contractor Information in the County's possession may be subject to
disclosure under Article 6 of the New York State Public Officer's Law ("Freedom of
Information Law" or "FOIL"). In the event that such a request for disclosure is made, the
County shall make reasonable efforts to notify the Contractor of such request prior to
disclosure of the Information so that the Contractor may take such action as it deems
appropriate.

12.

(d) Protection of Client Information. 1. Contractor understands that inmate records belong to the County. Contractor shall manage inmate medical files while serving as the inmate health care provider. In so managing this information, Contractor shall protect all patient health information as required by applicable local, state and federal law. Nothing herein shall be construed as prohibiting disclosure of inmate records created and/or maintained by Contractor pursuant to this Agreement to the County and Department.

2. Contractor agrees to maintain the confidentiality of all information obtained in the course of the performance of Services pursuant to this contract that pertains to construction, devices, procedures and policies utilized and/or implemented by the Department for the purpose of maintaining security of its premises, and/or for the purpose of ensuring safe and secure custody of all inmates remanded to the custody of the Department; and any other information otherwise protected from disclosure pursuant to local, state and/or federal law.

10.    Minimum Service Standards.  Regardless of whether required by Law:  (a) The Contractor shall, and shall cause Contractor Agents to, conduct its, his or her activities in connection with this Agreement so as not to endanger or harm any Person or property.

(b)  The Contractor shall deliver services under this Agreement in a professional manner consistent with the best practices of the industry in which the Contractor operates. The Contractor shall take all actions necessary or appropriate to meet the obligation described in the immediately preceding sentence, including obtaining and maintaining, and causing all Contractor Agents to obtain and maintain, all approvals, licenses, and certifications ("Approvals") necessary or appropriate in connection with this Agreement.

(c)  Contractor shall conduct background investigations on potential employees, including fingerprinting, at Contractor's own expense.  Contractor agrees not to employ any person, in connection with this Agreement, who: has a felony conviction; a misdemeanor conviction, ten years old or less, involving violence, dishonesty, marijuana or controlled substances; is on parole; has pending criminal charges; or is on probation for a felony conviction or a misdemeanor as described herein.

A failure to promptly conduct such background checks, through no fault of Contractor, shall be factored into Contractor's staffing requirement  pursuant to Attachment D.

11.    Indemnification; Defense; Cooperation.  (a)  The Contractor shall be solely responsible for and shall indemnify and hold harmless the County, the Department and its officers, employees, and agents (the "Indemnified Parties") from and against any and

13.

all liabilities, losses, costs, expenses including, without limitation, attorneys' fees and disbursements and damages ("Losses"), arising out of or in connection with any acts or omissions of the Contractor or a Contractor Agent, regardless of whether due to negligence, fault, or default, including Losses in connection with any threatened investigation, litigation or other proceedingor preparing a defense to or prosecuting the same; provided, however, that the Contractor shall not be responsible for that portion, if any, of a Loss that is caused by the negligence or willful misconduct of the of the indemnified parties.

Contractor shall have control of the defense and settlement of such claim or related action, provided that Contractor shall not settle such claim or related action in a manner which imposes any obligation on County without the prior written consent of County (which consent shall not be unreasonably withheld). County shall be entitled to engage counsel at its sole expense to consult with Contractor and Contractor's legal representatives with respect to the defense of the claim and related action.

(b)  The Contractor shall, upon the County's demand and at the County's direction, promptly and diligently defend, at the Contractor's own risk and expense, any and all suits, actions, or proceedings which may be brought or instituted against one or more Indemnified Parties for which the Contractor is responsible under this Section, and, further to the Contractor's indemnification obligations, the Contractor shall pay and satisfy any judgment, decree, loss or settlement in connection therewith.

(c)  The Contractor shall, and shall cause Contractor Agents to, cooperate with the County and the Department in connection with the investigation, defense or prosecution of any action, suit or proceeding in connection with this Agreement, including the acts or omissions of the Contractor and/or a Contractor Agent in connection with this Agreement.

(d) County shall make all records relating to this Agreement available to Contractor for purposes of investigation and defending any claim arising out of or relating to services provided under this Agreement, and Contractor shall make all records relating to this Agreement available to County for purposes of investigation and assisting in the defense of any claim arising out of or relating to services provided under this Agreement.

(e)  The provisions of this Section shall survive the termination of this Agreement.

12.  Insurance.  (a)  Types and Amounts.  The Contractor shall obtain and maintain throughout the term of this Agreement, at its own expense: (i) one or more policies for commercial general liability insurance, which certificates of insurance shall name "Nassau County" as an additional insured and have a minimum single combined limit of liability of not less than one million dollars ($1,000,000) per claim and Five million

14.

dollars ($5,000,000) aggregate coverage, (ii) if contracting in whole or part to provide professional services, one or more policies for professional liability insurance, which policy(ies) shall have a minimum single combined limit liability of not less than one million dollars ($1,000,000) per claim and Five million dollars ($5,000,000) aggregate coverage, (iii) compensation insurance for the benefit of the Contractor's employees ("Workers' Compensation Insurance"), which insurance is in compliance with the New York State Workers' Compensation Law, and (iv) such additional insurance as the County may from time to time specify.

(b) Acceptability; Deductibles; Subcontractors. All insurance obtained and maintained by the Contractor pursuant to this Agreement shall be (i) written by one or more commercial insurance carriers licensed to do business in New York State and acceptable to the County, and which is (ii) in form and substance acceptable to the County. The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance specified above. The insurer shall be in good standing within the state of Georgia through the Insurance Commissioner's Office and must be rated "A" or better, with AM Best Company.  The Contractor shall be solely responsible for the payment of all deductibles to which such policies are subject. The Contractor shall require any subcontractor hired in connection with this Agreement to carry one or more policies for professional liability insurance, which policy(ies) shall have a minimum single combined limit liability of not less than One Million dollars ($1,000,000.00) per claim and Three Million dollars ($3,000,000.00) aggregate coverage.  Contractor shall provide County with copies of such certificates of insurance for any and all subcontractors.

(c) Delivery; Coverage Change; No Inconsistent Action.  Prior to the execution of this Agreement, copies of current certificates of insurance evidencing the insurance coverage required by this Agreement shall be delivered to the Department. Not less than thirty (30) days prior to the date of any expiration or renewal of, or actual, proposed or threatened reduction or cancellation of coverage under, any insurance required hereunder, the Contractor shall provide written notice to the Department of the same and deliver to the Department renewal or replacement certificates of insurance. The Contractor shall cause all insurance to remain in full force and effect throughout the term of this Agreement and shall not take or omit to take any action that would suspend or invalidate any of the required coverages.  The failure of the Contractor to maintain Workers' Compensation Insurance shall render this contract void and of no effect.  The failure of the Contractor to maintain  required coverages shall be deemed a material breach of this Agreement upon which the County reserves the right to consider this Agreement terminated as of the date of such failure.

13.    Assignment; Amendment; Waiver; Subcontracting. This Agreement and the rights and obligations hereunder may not be in whole or part (i) assigned, transferred or disposed of, (ii) amended, (iii) waived, or (iv) subcontracted, without the prior written consent of the County Executive or his or her duly designated deputy (the "County

15.

Executive"), and any purported assignment, other disposal or modification without such prior written consent shall be null and void. The failure of a party to assert any of its rights under this Agreement, including the right to demand strict performance, shall not constitute a waiver of such rights.

14. <u>Termination</u>. (a) <u>Generally</u>. This Agreement may be terminated (i) for any reason by the County upon thirty (30) days' written notice to the Contractor, (ii) for "Cause" by the County immediately upon the receipt by the Contractor of written notice of termination, (iii) upon mutual written Agreement of the County and the Contractor, and (v) in accordance with any other provisions of this Agreement expressly addressing termination.

As used in this Agreement the word "<u>Cause</u>" includes: (i) a breach of this Agreement; (ii) the failure to obtain and maintain in full force and effect all Approvals required for the services described in this Agreement to be legally and professionally rendered; and (iii) the termination or impending termination of federal or state funding for the services to be provided under this Agreement.

(b) <u>By the Contractor</u>. This Agreement may be terminated by the Contractor if performance becomes impracticable through no fault of the Contractor, where the impracticability relates to the Contractor's ability to perform its obligations and not to a judgment as to convenience or the desirability of continued performance. Termination under this subsection shall be effected by the Contractor delivering to the commissioner or other head of the Department (the "<u>Commissioner</u>"), at least sixty (60) days prior to the termination date (or a shorter period if sixty days' notice is impossible), a notice stating (i) that the Contractor is terminating this Agreement in accordance with this subsection, (ii) the date as of which this Agreement will terminate, and (iii) the facts giving rise to the Contractor's right to terminate under this subsection. A copy of the notice given to the Commissioner shall be given to the Deputy County Executive who oversees the administration of the Department (the "<u>Applicable DCE</u>") on the same day that notice is given to the Commissioner.

(c) <u>Contractor Assistance upon Termination</u>. In connection with the termination or impending termination of this Agreement the Contractor shall, regardless of the reason for termination, take all actions reasonably requested by the County (including those set forth in other provisions of this Agreement) to assist the County in transitioning the Contractor's responsibilities under this Agreement. The provisions of this subsection shall survive the termination of this Agreement.

15. <u>Accounting Procedures; Records.</u> The Contractor shall maintain and retain, for a period of six (6) years following the later of termination of or final payment under this Agreement, complete and accurate records, documents, accounts and other evidence, whether maintained electronically or manually ("<u>Records</u>"), pertinent to performance under this Agreement. Records shall be maintained in accordance with Generally Accepted Accounting Principles and, if the Contractor is a non-profit entity, must comply with the accounting guidelines set forth in the federal Office of Management & Budget Circular A-122, "Cost Principles for Non-Profit Organizations."

16.

Such Records shall at all times be available for audit and inspection by the Comptroller, the Department, any other governmental authority with jurisdiction over the provision of services hereunder and/or the payment therefore, and any of their duly designated representatives. The provisions of this Section shall survive the termination of this Agreement.

16.    Limitations on Actions and Special Proceedings against the County.  No action or special proceeding shall lie or be prosecuted or maintained against the County upon any claims arising out of or in connection with this Agreement unless

(a)  Notice.  At least thirty (30) days prior to seeking relief the Contractor shall have presented the demand or claim(s) upon which such action or special proceeding is based in writing to the Applicable DCE for adjustment and the County shall have neglected or refused to make an adjustment or payment on the demand or claim for thirty (30) days after presentment.  The Contractor shall send or deliver copies of the documents presented to the Applicable DCE under this Section to each of (i) the Department and the (ii) the County Attorney (at the address specified above for the County) on the same day that documents are sent or delivered to the Applicable DCE.  The complaint or necessary moving papers of the Contractor shall allege that the above-described actions and inactions preceded the Contractor's action or special proceeding against the County.

(b)  Time Limitation.  Such action or special proceeding is commenced within the earlier of (i) one (1) year of the first to occur of (A) final payment under or the termination of this Agreement, and (B) the accrual of the cause of action, and (ii) the time specified in any other provision of this Agreement; unless the action or special proceeding is based on intentional tortious acts, in which case it must occur within one (1) year from Contractor learning of such intentional act, but in no event later than two years from an occurrence pursuant to (i) herein.

17. Work Performance Liability. (a).  The Contractor is and shall remain primarily liable for the successful completion of all work in accordance this Agreement irrespective of whether the Contractor is using a Contractor Agent to perform some or all of the work contemplated by this Agreement, and irrespective of whether the use of such Contractor Agent has been approved by the County.

(b)  Force Majeure.  Neither party shall be held responsible for any delay or failure in performance to the extent that such delay or failure is caused, without limitation, by strikes, inmate disturbances, acts of public enemy, fire, flood, earthquakes, hurricanes, failure of transportation, explosion, war, embargo, government regulation, civil or military authority or acts of God.

18.    Consent to Jurisdiction and Venue; Governing Law.  Unless otherwise specified in this Agreement or required by Law, exclusive original jurisdiction for all claims or actions with respect to this Agreement shall be in the Supreme Court in

17.

Nassau County in New York State and the parties expressly waive any objections to the same on any grounds, including venue and forum non conveniens. This Agreement is intended as a contract under, and shall be governed and construed in accordance with, the Laws of New York State, without regard to the conflict of laws provisions thereof.

19.   Notices. Any notice, request, demand or other communication required to be given or made in connection with this Agreement shall be (a) in writing, (b) delivered or sent (i) by hand delivery, evidenced by a signed, dated receipt, (ii) postage prepaid via certified mail, return receipt requested, or (iii) overnight delivery via a nationally recognized courier service, (c) deemed given or made on the date the delivery receipt was signed by a County employee, or one (1) business day after it is released to a courier service, as applicable, and (d)(i) if to the Department, to the attention of the Sheriff at the address specified above for the Department, (ii) if to an Applicable DCE, to the attention of the Applicable DCE (whose name the Contractor shall obtain from the Department) at the address specified above for the County, (iii) if to the Comptroller, to the attention of the Comptroller at 240 Old Country Road, Mineola, NY 11501, and (iv) if to the Contractor, to the attention of the person who executed this Agreement on behalf of the Contractor at the address specified above for the Contractor, or in each case to such other persons or addresses as shall be designated by written notice.

20.   All Legal Provisions Deemed Included; Severability; Supremacy. (a) Every provision required by Law to be inserted into or referenced by this Agreement is intended to be a part of this Agreement. If any such provision is not inserted or referenced or is not inserted or referenced in correct form then (i) such provision shall be deemed inserted into or referenced by this Agreement for purposes of interpretation and (ii) upon the application of either party this Agreement shall be formally amended to comply strictly with the Law, without prejudice to the rights of either party.

(b)  In the event that any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(c)  Unless the application of this subsection will cause a provision required by Law to be excluded from this Agreement, in the event of an actual conflict between the terms and conditions set forth above the signature page to this Agreement and those contained in any schedule, exhibit, appendix, or attachment to this Agreement, the terms and conditions set forth above the signature page shall control. To the extent possible, all the terms of this Agreement should be read together as not conflicting.

(d)  Each party has cooperated in the negotiation and preparation of this Agreement. Therefore, in the event that construction of this Agreement occurs, it shall not be construed against either party as drafter.

21.   Section and Other Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

18.

22    Entire Agreement. This Agreement represents the full and entire understanding and agreement between the parties with regard to the subject matter hereof and supersedes all prior agreements (whether written or oral) of the parties relating to the subject matter of this Agreement.

23.   Administrative Service Charge.  The Contractor agrees to pay the County an administrative service charge of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for the processing of this Agreement pursuant to Ordinance Number 74-1979, as amended by Ordinance Number 128-2006. The administrative service charge shall be due and payable to the County by the Contractor upon signing this Agreement.

24.   Executory Clause.  Notwithstanding any other provision of this Agreement:

(a)  Approval and Execution.  The County shall have no liability under this Agreement (including any extension or other modification of this Agreement) to any Person unless (i) all County approvals have been obtained, including, if required, approval by the County Legislature, and (ii) this Agreement has been executed by the County Executive (as defined in this Agreement).

(b)  Availability of Funds.  The County shall have no liability under this Agreement (including any extension or other modification of this Agreement) to any Person beyond funds appropriated or otherwise lawfully available for this Agreement, and, if any portion of the funds for this Agreement are from the state and/or federal governments, then beyond funds available to the County from the state and/or federal governments.

19.

IN WITNESS WHEREOF, the Contractor and the County have executed this Agreement as of the date first above written.

ARMOR CORRECTIONAL HEALTH SERIVCES OF NEW YORK, INC.

By: _____
    Name: Ken Palambo
    Title: COO
    Date: 3-17-2011

NASSAU COUNTY

By: _____
    Name: _____
    Title: Deputy County Executive
    Date: 5-5-2011

PLEASE EXECUTE IN BLUE INK

20.

Tennessee

STATE OF NEW YORK)
                  )ss.:
COUNTY OF NASSAU)
       williamson

On the 17ᵗʰ day of March _____ in the year 2011 before me personally came Kenneth Palombo to me personally known, who, being by me duly sworn, did depose and say that he or she resides in the County of Williamson ; that he or she is the CSO _____ of Armor Correction & Health the corporation described herein and which executed the above instrument; and that he or she signed his or her name thereto by authority of the board of directors of said corporation.

[Notary seal: TENNY WENTZ, STATE OF TENNESSEE NOTARY PUBLIC, RUTHERFORD COUNTY]

3-17-11

My commission expires August 18, 2012

STATE OF NEW YORK)
                  )ss.:
COUNTY OF NASSAU )

On the 5 day of M_____ in the year 20__ before me personally came Edward P. Mangano to me personally known, who, being by me duly sworn, did depose and say that he or she resides in the County of Nassau ; that he or she is a Deputy County Executive of the County of Nassau, the municipal corporation described herein and which executed the above instrument; and that he or she signed his or her name thereto pursuant to Section 205 of the County Government Law of Nassau County.

NOTARY PUBLIC

Brian R. Nevin
Notary Public - State of New York
Albany County
No. 01NE6188908
Exp. 06/16/2012



*George Maragos*
*Comptroller*

**OFFICE OF THE COMPTROLLER**
240 Old Country Road
Mineola, New York 11501

# COMPTROLLER APPROVAL FORM FOR PERSONAL, PROFESSIONAL OR HUMAN SERVICES CONTRACTS

*Attach this form along with all personal, professional or human services contracts, contract renewals, extensions and amendments.*

**CONTRACTOR NAME:** Armor Correctional Health Services of New York, Inc.

**CONTRACTOR ADDRESS:** 4960 S.W. 72nd Ave., Suite 400 Miami, Fla. 33155

**FEDERAL TAX ID #:** 61-1642662

---

***Instructions:*** **Please check the appropriate box ("☑") after one of the following roman numerals, and provide all the requested information.**

**I. ☐ The contract was awarded to the lowest, responsible bidder after advertisement for sealed bids.** The contract was awarded after a request for sealed bids was published in_____ [newspaper] on _____ [date]. The sealed bids were publicly opened on _____ [date]. _____ [#] of sealed bids were received and opened.

**II. ☒ The contractor was selected pursuant to a Request for Proposals.**
The Contract was entered into after a written request for proposals was issued on 7/30/09 [date]. Potential proposers were made aware of the availability of the RFP by newspaper ad and* [newspaper advertisement, posting on website, mailing, etc.].unknown [#] of potential proposers requested copies of the RFP. Proposals were due on 10/13/09 [date]. 7 [#] proposals were received    and   6   evaluated. ** The evaluation committee consisted of: Representatives of County OMB, County DOH, County OMH, the Sheriff's Department and the County Attorney's Office

_____ [list members]. The proposals were scored and ranked. As a result of the scoring and ranking (attached), the highest-ranking proposer was selected.
*published on the Nassau County Purchasing Website.

**one proposer was disqualified.

**III.** □ **This is a renewal, extension or amendment of an existing contract.**
The contract was originally executed by Nassau County on _____ [date]. This is a renewal or extension pursuant to the contract, or an amendment within the scope of the contract or RFP (copies of the relevant pages are attached). The original contract was entered into after_____

_____

_____ [describe procurement method, i.e., RFP, three proposals evaluated, etc.] Attach a copy of the most recent evaluation of the contractor's performance for any contract to be renewed or extended. If the contractor has not received a satisfactory evaluation, the department must explain why the contractor should nevertheless be permitted to continue to contract with the county.

**IV.** □ **Pursuant to Executive Order No. 1 of 1993, as amended, at least three proposals were solicited and received. The attached memorandum from the department head describes the proposals received, along with the cost of each proposal.**

   □ **A.** The contract has been awarded to the proposer offering the lowest cost proposal; **OR:**

   □ **B.** The attached memorandum contains a detailed explanation as to the reason(s)why the contract was awarded to other than the lowest-cost proposer. The attachment includes a specific delineation of the unique skills and experience, the specific reasons why a proposal is deemed superior, and/or why the proposer has been judged to be able to perform more quickly than other proposers.

**V.** □ **Pursuant to Executive Order No. 1 of 1993 as amended, the attached memorandum from the department head explains why the department did not obtain at least three proposals.**

   □ **A.** There are only one or two providers of the services sought or less than three providers submitted proposals. The memorandum describes how the contractor was determined to be the sole source provider of the personal service needed or explains why only two proposals could be obtained. If two proposals were obtained, the memorandum explains that the contract was awarded to the lowest cost proposer, or why the selected proposer offered the higher quality proposal, the proposer's unique and special experience, skill, or expertise, or its availability to perform in the most immediate and timely manner.

   □ **B.** The memorandum explains that the contractor's selection was dictated by the terms of a federal or New York State grant, by legislation or by a court order. (Copies of the relevant documents are attached).

   □ **C.** Pursuant to General Municipal Law Section 104, the department is purchasing the services required through a New York State Office of General Services contract no._____, and the attached memorandum explains how the purchase is within the scope of the terms of that contract.

☐ **D.** Pursuant to General Municipal Law Section 119-o, the department is purchasing the services required through an inter-municipal agreement.

**VI. ☐ This is a human services contract with a not-for-profit agency for which a competitive process has not been initiated.** Attached is a memorandum that explains the reasons for entering into this contract without conducting a competitive process, and details when the department intends to initiate a competitive process for the future award of these services. For any such contract, where the vendor has previously provided services to the county, attach a copy of the most recent evaluation of the vendor's performance. If the contractor has not received a satisfactory evaluation, the department must explain why the contractor should nevertheless be permitted to contract with the county.

In certain limited circumstances, conducting a competitive process and/or completing performance evaluations may not be possible because of the nature of the human services program, or because of a compelling need to continue services through the same provider. In those circumstances, attach an explanation of why a competitive process and/or performance evaluation is inapplicable.

**VII. ☐ This is a public works contract for the provision of architectural, engineering or surveying services.** The attached memorandum provides details of the department's compliance with Board of Supervisors' Resolution No.928 of 1993, including its receipt and evaluation of annual Statements of Qualifications & Performance Data, and its negotiations with the most highly qualified firms.

***In addition, if this is a contract with an individual or with an entity that has only one or two employees:***

☐ a review of the criteria set forth by the Internal Revenue Service, *Revenue Ruling No.* 87-41, 1987-1 C.B. 296, attached as Appendix A to the Comptroller's Memorandum, dated February 13, 2004, concerning independent contractors and employees indicates that the contractor would not be considered an employee for federal tax purposes.

_____
Department Head Signature

_____
Date

***NOTE:*** *Any information requested above, or in the exhibit below, may be included in the county's "staff summary" form in lieu of a separate memorandum.*

*Compt. form Pers./Prof. Services Contracts: Rev. 02/04*

## CONTRACT FOR SERVICES

THIS AGREEMENT, dated as of _____ ____, 20_11__ (together with the schedules, appendices, attachments and exhibits, if any, this "Agreement"), is entered into by and between (i) Nassau County, a municipal corporation having its principal office at 1550 Franklin Avenue, Mineola, New York 11501 (the "County"), acting on behalf of the County Sheriff's Department , having its principal office at 100 Carman Avenue, East Meadow, New York 11554, (the "Department"), and (ii) Armor Correctional Health Services of New York, Inc., a Florida corporation, having its principal office at 4960 S.W. 72nd Ave, Suite 400, Miami, FL 33155 (the "Contractor").

### W I T N E S S E T H:

WHEREAS, the County desires to hire the Contractor to perform the services described in this Agreement; and

WHEREAS, this is a personal service contract within the intent and purview of Section 2206 of the County Charter;

WHEREAS, the Contractor desires to perform the services described in this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained in this Agreement, the parties agree as follows:

1.    Term.  This Agreement shall commence on May 14, 2011, and terminate on May 13, 2013, unless sooner terminated in accordance with the provisions of this Agreement; [provided, however, the County may renew this Agreement under the same terms and conditions, subject to the provisions of section 6. Payment below, for two additional one (1) year periods.]

2.    Definitions.

(a) "County" as used herein is the County of Nassau, New York State

(b) "Department" as used herein is the Nassau County Sheriff's Department

(c) "NCCC" as used herein is the Nassau County Correctional Center
(d) "Sheriff" as used herein is the Nassau County Sheriff or his designated representative
(e) "Contractor" as used herein is Armor Correctional Health Services of New York, Inc.

(f) "DCE" as used herein is the Chief Deputy County Executive or Deputy County Executive as designated by the Nassau County Executive.

(g) "Subcontractor" as used herein is any facility, agency, organization or consultant that the Contractor utilizes to provide services or equipment pursuant to this Agreement, and which has been approved by the Department.

1.

(h) "Agreement" as used herein" is this document and any and all attachments
hereto, and any and all matters incorporated herein by reference.
(i) "Health Care Prescribing Provider" (HCPP) as used herein is any licensed
medical or mental health practitioners that are licensed to prescribe
medication, employed or subcontracted by Contractor, and includes, but is not
limited to, the following titles: medical doctor, physician assistant, nurse
practitioner, psychiatrist and dentist.

(j) "Health Care Professional" (HCP) as used herein is any medical professional,
not licensed to prescribe medication, employed or subcontracted by Contractor
and includes but is not limited to the following titles: registered nurses, MSWs,
licensed practical nurses, dental assistants, x-ray technicians and dieticians.

(k) "Health Contract Administrator" as used herein is the County employee
designated to oversee administration of and monitor compliance with this
Agreement on behalf of the County and Department.

(l) "Inmate" as used herein is any person in the custody of the Sheriff and/or
admitted to and incarcerated at NCCC.

(m) "NCCHC" as used herein is the National Commission on Correctional Health
Care

(n) "Accreditation" as used herein is certification of NCCC by NCCHC as
having met their published standards on jail-based health services

(o) "SCOC" as used herein is the New York State Commission of Correction, a
NYS agency responsible for oversight of all state and local jails, prisons and
police lock-ups.

(p) "Minimum standards" as used herein are the standards promulgated by the
SCOC for the management of county jails, and the care, custody and control of
inmates remanded thereto.

(q) "DOJ Settlement" as used herein is the agreement executed between the
County of Nassau and the U.S. Department of Justice on April 22, 2002, setting
forth certain requirements for comprehensive inmate health and mental health
services for persons incarcerated at NCCC.

(r) Health Services Administrator (HSA): Contractor's site manager having
overall responsibilities of the day to day operations and management of
Contractor's services and responsibilities pursuant to this Agreement.
(s) "Offsite Services" as used herein are medical, mental health and ancillary
services provided to inmates in the custody of the Department at a location other
than NCCC. Such services shall include outpatient and inpatient care. For

2.

purposes of section 6. Payment, subsections (a) (3) and (b) (2), offsite services shall not include an inpatient admission of an inmate that occurs while the inmate is in police custody only, and remains in such inpatient status upon transfer of custody to the Department, or emergency room treatment of an inmate that occurs while the inmate is in police custody only.

(t) "Outpatient Services" as used herein are medical, mental health and ancillary services provided to inmates in the custody of the Department at a location other than NCCC, including hospital emergency room care and specialty clinic care, other than clinics located at NCCC.

(u) "Inpatient Services" as used herein are medical, mental health and ancillary services provided to inmates in the custody of the Department upon admission to a hospital bed.

3.      Services.  The services to be provided by the Contractor under this Agreement shall consist of:

(a) Inmate Medical Services as set forth in RFP# SH0723-0924, attached hereto as Attachment A, and clarified in Contractors proposal dated October 13, 2009, attached hereto as Attachment B (each of which is incorporated herein by reference) and as set forth herein ("Services"):

(b) onsite specialty services and clinics as patient needs justify, including but not limited to: Orthopedics, Physical Therapy, Optometry (which will include, as necessary, diabetic screening), Chronic Care, Infectious Disease, OB/Gyn, Dental, and Dialysis. Contractor and County agree to review statistics regarding off-site specialty clinic visits to determine which, if any, additional clinics can and will be provided onsite at NCCC;

(c) Infirmary/sub-acute care on site at NCCC, pursuant to Attachment C hereto and incorporated herein by reference. Contractor shall develop a list of needed equipment, and the cost of each individual piece of equipment, for the NCCC infirmary and provide it to the Department. Upon approval by the Department, Contractor shall purchase the listed equipment, unless the County elects to provide any equipment on the list. Once purchased, Contractor shall submit documentation of purchase and the County shall promptly reimburse Armor. All equipment purchased by Contractor and reimbursed by the County shall become County property. Upon request of the Department, Contractor shall provide proof of delivery to NCCC of all equipment herein.

3.

EDWARD P. MANGANO
COUNTY EXECUTIVE



JOHN CIAMPOLI
COUNTY ATTORNEY

## INTERDEPARTMENTAL MEMO

To:    **PAUL HERZFELD**

From:  **JOSEPH MARCINEK**

Date:  **APRIL 19, 2011**

Re:    **CONTRACTS**

### THE FOLLOWING CONTRACTS HAVE BEEN RECEIVED

E-68-11- CQCC11000005- Contract with Sheriff's Dept. & Armor Correctional Health Services of
New York, Inc.

## GUIDELINES FOR DISCLOSURE

The County Legislature requires the following information prior to consideration:

- Names and business addresses and telephone numbers of all Principals.

The term "Principal" means a stockholder, officer, director, partner, member, or other controlling person of a business or entity including the following: a corporation, professional service corporation, joint stock company, general or limited partnership, limited association, limited liability company (including a professional service limited liability company), foreign liability company (including a foreign professional service limited liability company), joint venture, real estate investment trust, business trust or other trust, or sole proprietorship.

If an entity is traded on a public exchange then the above disclosure is not required, but a copy of the disclosure required by the SEC must accompany the proposed resolution together with a statement by the petitioner or its attorney that the company is publicly traded.

### Armor Correctional Health Services of New York, Inc.

1. Jose Armas 4960 S.W. 72nd Ave, Suite 400, Miami, FL 33155 / 305 662 8522
   a. President / Director
2. Bruce Teal 4960 S.W. 72nd Ave, Suite 400, Miami, FL 33155 / 305 662 8522
   a. Chief Executive Officer / Chief Financial Officer
3. Marta Solodko 4960 S.W. 72nd Ave, Suite 400, Miami, FL 33155 / 305 662 8522
   a. Corporate Secretary
4. Ken Palombo 4960 S.W. 72nd Ave, Suite 400, Miami, FL 33155 / 305 662 8522
   a. Chief Operating Officer / General Counsel

Appendix EE
**Equal Employment Opportunities for Minorities and Women**

The provisions of this Appendix EE are hereby made a part of the document to which it is attached.

The Contractor shall comply with all federal, State and local statutory and constitutional anti-discrimination provisions. In addition, Local Law No. 14-2002, entitled "Participation by Minority Group Members and Women in Nassau County Contracts," governs all County Contracts as defined herein and solicitations for bids or proposals for County Contracts. In accordance with Local Law 14-2002:

(a) The Contractor shall not discriminate against employees or applicants for employment because of race, creed, color, national origin, sex, age, disability or marital status in recruitment, employment, job assignments, promotions, upgradings, demotions, transfers, layoffs, terminations, and rates of pay or other forms of compensation. The Contractor will undertake or continue existing programs related to recruitment, employment, job assignments, promotions, upgradings, transfers, and rates of pay or other forms of compensation to ensure that minority group members and women are afforded equal employment opportunities without discrimination.

(b) At the request of the County contracting agency, the Contractor shall request each employment agency, labor union, or authorized representative of workers with which it has a collective bargaining or other agreement or understanding, to furnish a written statement that such employment agency, union, or representative will not discriminate on the basis of race, creed, color, national origin, sex, age, disability, or marital status and that such employment agency, labor union, or representative will affirmatively cooperate in the implementation of the Contractor's obligations herein.

(c) The Contractor shall state, in all solicitations or advertisements for employees, that, in the performance of the County Contract, all qualified applicants will be afforded equal employment opportunities without discrimination because of race, creed, color, national origin, sex, age, disability or marital status.

(d) The Contractor shall make best efforts to solicit active participation by certified minority or women-owned business enterprises ("Certified M/WBEs") as defined in Section 101 of Local Law No. 14-2002, for the purpose of granting of Subcontracts.

(e) The Contractor shall, in its advertisements and solicitations for Subcontractors, indicate its interest in receiving bids from Certified M/WBEs and the requirement that Subcontractors must be equal opportunity employers.

(f) Contractors must notify and receive approval from the respective Department Head prior to issuing any Subcontracts and, at the time of requesting such authorization, must submit a signed Best Efforts Checklist.

(g) Contractors for projects under the supervision of the County's Department of Public Works shall also submit a utilization plan listing all proposed Subcontractors so that, to the greatest extent feasible, all Subcontractors will be approved prior to commencement of work. Any additions or changes to the list of subcontractors under the utilization plan shall be approved by the Commissioner of the Department of Public

Works when made. A copy of the utilization plan any additions or changes thereto shall be submitted by the Contractor to the Office of Minority Affairs simultaneously with the submission to the Department of Public Works.

(h)  At any time after Subcontractor approval has been requested and prior to being granted, the contracting agency may require the Contractor to submit Documentation Demonstrating Best Efforts to Obtain Certified Minority or Women-owned Business Enterprises.  In addition, the contracting agency may require the Contractor to submit such documentation at any time after Subcontractor approval when the contracting agency has reasonable cause to believe that the existing Best Efforts Checklist may be inaccurate.  Within ten working days (10) of any such request by the contracting agency, the Contractor must submit Documentation.

(i)  In the case where a request is made by the contracting agency or a Deputy County Executive acting on behalf of the contracting agency, the Contractor must, within two (2) working days of such request, submit evidence to demonstrate that it employed Best Efforts to obtain Certified M/WBE participation through proper documentation.

(j)  Award of a County Contract alone shall not be deemed or interpreted as approval of all Contractor's Subcontracts and Contractor's fulfillment of Best Efforts to obtain participation by Certified M/WBEs.

(k)  A Contractor shall maintain Documentation Demonstrating Best Efforts to Obtain Certified Minority or Women-owned Business Enterprises for a period of six (6) years.  Failure to maintain such records shall be deemed failure to make Best Efforts to comply with this Appendix EE, evidence of false certification as M/WBE compliant or considered breach of the County Contract.

(l)  The Contractor shall be bound by the provisions of Section 109 of Local Law No. 14-2002 providing for enforcement of violations as follows:

a.  Upon receipt by the Executive Director of a complaint from a contracting agency that a County Contractor has failed to comply with the provisions of Local Law No. 14-2002, this Appendix EE or any other contractual provisions included in furtherance of Local Law No. 14-2002, the Executive Director will try to resolve the matter.

b.  If efforts to resolve such matter to the satisfaction of all parties are unsuccessful, the Executive Director shall refer the matter, within thirty days (30) of receipt of the complaint, to the American Arbitration Association for proceeding thereon.

c.  Upon conclusion of the arbitration proceedings, the arbitrator shall submit to the Executive Director his recommendations regarding the imposition of sanctions, fines or penalties.  The Executive Director shall either (i) adopt the recommendation of the arbitrator (ii) determine that no sanctions, fines or penalties should be imposed or (iii) modify the recommendation of the arbitrator, provided that such modification shall not expand upon any sanction recommended or impose any new sanction, or increase the amount of any recommended fine or penalty.  The Executive Director, within ten days

(10) of receipt of the arbitrators award and recommendations, shall file a determination of such matter and shall cause a copy of such determination to be served upon the respondent by personal service or by certified mail return receipt requested. The award of the arbitrator, and the fines and penalties imposed by the Executive Director, shall be final determinations and may only be vacated or modified as provided in the civil practice law and rules ("CPLR").

(m) The contractor shall provide contracting agency with information regarding all subcontracts awarded under any County Contract, including the amount of compensation paid to each Subcontractor and shall complete all forms provided by the Executive Director or the Department Head relating to subcontractor utilization and efforts to obtain M/WBE participation.

Failure to comply with provisions (a) through (m) above, as ultimately determined by the Executive Director, shall be a material breach of the contract constituting grounds for immediate termination. Once a final determination of failure to comply has been reached by the Executive Director, the determination of whether to terminate a contract shall rest with the Deputy County Executive with oversight responsibility for the contracting agency.

Provisions (a), (b) and (c) shall not be binding upon Contractors or Subcontractors in the performance of work or the provision of services or any other activity that are unrelated, separate, or distinct from the County Contract as expressed by its terms.

The requirements of the provisions (a), (b) and (c) shall not apply to any employment or application for employment outside of this County or solicitations or advertisements therefor or any existing programs of affirmative action regarding employment outside of this County and the effect of contract provisions required by these provisions (a), (b) and (c) shall be so limited.

The Contractor shall include provisions (a), (b) and (c) in every Subcontract in such a manner that these provisions shall be binding upon each Subcontractor as to work in connection with the County Contract.

As used in this Appendix EE the term "Best Efforts Checklist" shall mean a list signed by the Contractor, listing the procedures it has undertaken to procure Subcontractors in accordance with this Appendix EE.

As used in this Appendix EE the term "County Contract" shall mean (i) a written agreement or purchase order instrument, providing for a total expenditure in excess of twenty-five thousand dollars ($25,000), whereby a County contracting agency is committed to expend or does expend funds in return for labor, services, supplies, equipment, materials or any combination of the foregoing, to be performed for, or rendered or furnished to the County; or (ii) a written agreement in excess of one hundred thousand dollars ($100,000), whereby a County contracting agency is committed to expend or does expend funds for the acquisition, construction, demolition, replacement,

major repair or renovation of real property and improvements thereon. However, the term "County Contract" does not include agreements or orders for the following services: banking services, insurance policies or contracts, or contracts with a County contracting agency for the sale of bonds, notes or other securities.

As used in this Appendix EE the term "County Contractor" means an individual, business enterprise, including sole proprietorship, partnership, corporation, not-for-profit corporation, or any other person or entity other than the County, whether a contractor, licensor, licensee or any other party, that is (i) a party to a County Contract, (ii) a bidder in connection with the award of a County Contract, or (iii) a proposed party to a County Contract, but shall not include any Subcontractor.

As used in this Appendix EE the term "County Contractor" shall mean a person or firm who will manage and be responsible for an entire contracted project.

As used in this Appendix EE "Documentation Demonstrating Best Efforts to Obtain Certified Minority or Women-owned Business Enterprises" shall include, but is not limited to the following:

a.    Proof of having advertised for bids, where appropriate, in minority publications, trade newspapers/notices and magazines, trade and union publications, and publications of general circulation in Nassau County and surrounding areas or having verbally solicited M/WBEs whom the County Contractor reasonably believed might have the qualifications to do the work. A copy of the advertisement, if used, shall be included to demonstrate that it contained language indicating that the County Contractor welcomed bids and quotes from M/WBE Subcontractors. In addition, proof of the date(s) any such advertisements appeared must be included in the Best Effort Documentation. If verbal solicitation is used, a County Contractor's affidavit with a notary's signature and stamp shall be required as part of the documentation.

b.    Proof of having provided reasonable time for M/WBE Subcontractors to respond to bid opportunities according to industry norms and standards. A chart outlining the schedule/time frame used to obtain bids from M/WBEs is suggested to be included with the Best Effort Documentation

c.    Proof or affidavit of follow-up of telephone calls with potential M/WBE subcontractors encouraging their participation. Telephone logs indicating such action can be included with the Best Effort Documentation

d.    Proof or affidavit that M/WBE Subcontractors were allowed to review bid specifications, blue prints and all other bid/RFP related items at no charge to the M/WBEs, other than reasonable documentation costs incurred by the County Contractor that are passed onto the M/WBE.

e.    Proof or affidavit that sufficient time prior to making award was allowed for M/WBEs to participate effectively, to the extent practicable given the timeframe of the County Contract.

f.    Proof or affidavit that negotiations were held in good faith with interested M/WBEs, and that M/WBEs were not rejected as unqualified or unacceptable without sound business reasons based on (1) a thorough investigation of M/WBE qualifications and capabilities reviewed against industry custom and standards and (2) cost of performance The basis for rejecting any M/WBE deemed unqualified by the County Contractor shall be included in the Best Effort Documentation

g.    If an M/WBE is rejected based on cost, the County Contractor must submit a list of all sub-bidders for each item of work solicited and their bid prices for the work.

h.    The conditions of performance expected of Subcontractors by the County Contractor must also be included with the Best Effort Documentation

i.    County Contractors may include any other type of documentation they feel necessary to further demonstrate their Best Efforts regarding their bid documents.

As used in this Appendix EE the term "Executive Director" shall mean the Executive Director of the Nassau County Office of Minority Affairs; provided, however, that Executive Director shall include a designee of the Executive Director except in the case of final determinations issued pursuant to Section (a) through (l) of these rules.

As used in this Appendix EE the term "Subcontract" shall mean an agreement consisting of part or parts of the contracted work of the County Contractor.

As used in this Appendix EE, the term "Subcontractor" shall mean a person or firm who performs part or parts of the contracted work of a prime contractor providing services, including construction services, to the County pursuant to a county contract. Subcontractor shall include a person or firm that provides labor, professional or other services, materials or supplies to a prime contractor that are necessary for the prime contractor to fulfill its obligations to provide services to the County pursuant to a county contract. Subcontractor shall not include a supplier of materials to a contractor who has contracted to provide goods but no services to the County, nor a supplier of incidental materials to a contractor, such as office supplies, tools and other items of nominal cost that are utilized in the performance of a service contract.

Provisions requiring contractors to retain or submit documentation of best efforts to utilize certified subcontractors and requiring Department head approval prior to subcontracting shall not apply to inter-governmental agreements. In addition, the tracking of expenditures of County dollars by not-for-profit corporations, other municipalities, States, or the federal government is not required.

Appendix L

Certificate of Compliance

In compliance with Local Law 1-2006, as amended (the "Law"), the Contractor hereby certifies the following:

1.  The chief executive officer of the Contractor is:

    _____Bruce A. Teal_____ (Name)

    _____4960 72nd S.W., Suite 400, Miami, FL 33155 (Address)

    _____305 662 8522_____ (Telephone Number)

2.  The Contractor agrees to either (1) comply with the requirements of the Nassau County Living Wage Law or (2) as applicable, obtain a waiver of the requirements of the Law pursuant to section 9 of the Law. In the event that the contractor does not comply with the requirements of the Law or obtain a waiver of the requirements of the Law, and such contractor establishes to the satisfaction of the Department that at the time of execution of this agreement, it had a reasonable certainty that it would receive such waiver based on the Law and Rules pertaining to waivers, the County will agree to terminate the contract without imposing costs or seeking damages against the Contractor

3. In the past five years, Contractor _____ has __X_ has not been found by a court or a government agency to have violated federal, state, or local laws regulating payment of wages or benefits, labor relations, or occupational safety and health. If a violation has been assessed against the Contractor, describe below:

_____

_____

_____

_____

_____

_____

_____

_____

I hereby certify that I have read the foregoing Certificate of Compliance and, to the best of my knowledge and belief, it is true, correct and complete. Any statement or representation made herein shall be accurate and true as of the date stated below.

October 7, 2009
_____
Dated

_____
Signature of Chief Executive Officer

Bruce Teal
_____
Name of Chief Executive Officer

Sworn to before me this

7 day of _October, 2009,_

_____
Notary Public

Notary Public State of Florida
N Capiro
My Commission DD610155
Expires 10/30/2010

LBBS (K-3) 000156